NOTICE OF REMOVAL EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| BRYAN C. WAGNER, | § |
| | § |
|     Plaintiff, | § |
| | § |
| v. | §    CIVIL ACTION NO.: |
| | § |
| NORTHFIELD INSURANCE COMPANY, | § |
| | § |
|     Defendant. | § |

_____

**INDEX OF DOCUMENTS FILED IN STATE COURT ACTION**
_____

Pursuant to Local Rule 81.1(a)(4), Defendant, Northfield Insurance Company ("Northfield"), hereby provides the following index of all documents filed in the state court action, and all documents served upon Northfield, which are attached hereto:

| | Document | Filing Date |
|---|---|---|
| 1. | Citation | n/a (received March 2, 2017) |
| 2. | Plaintiff's Original Petition | February 28, 2017 |



## TEXAS DEPARTMENT OF INSURANCE

**General Counsel Division (113-2A)**
333 Guadalupe, Austin, Texas 78701 ★ PO Box 149104, Austin, Texas 78714-9104
(512) 676-6585 | F: (512) 490-1064 | (800) 578-4677 | TDI.texas.gov | @TexasTDI

CORPORATE LITIGATION
HARTFORD

MAR 0 8 2017

March 3, 2017

RECEIVED PM

**Certified Mail No. 7010 1870 0003 4284 4519**
**Return Receipt Requested**

Brian W. MacLean, President
Northfield Insurance Company
1 Tower Square
Hartford, CT 06183-0001

Re: Cause No. 067-290721-17; styled *Bryan c. Wagner vs. Northfield Insurance Company;*
in the 67th Judicial District Court, Tarrant County, Texas
**TDI E-Case No. 12678**

Greetings:

Service of Process has been requested through the Commissioner of Insurance. Enclosed
please find citation and Plaintiff's Original Petition and Exhibits A and B in the above-
referenced matter. These documents were served upon the Commissioner of Insurance on
March 2, 2017.

Sincerely,

Tish Wilhelm

Tish Wilhelm
General Counsel Division
(512) 676-6543

Enclosures

**THE STATE OF TEXAS**          **SERVICE COPY**
**DISTRICT COURT, TARRANT COUNTY**

*CITATION*          *Cause No. 067-290721-17*

BRYAN C. WAGNER
VS.

NORTHFIELD INSURANCE COMPANY

To and through the Commissioner Of Insurance, 333 Guadalupe, Austin, Texas 78701
TO: NORTHFIELD INSURANCE COMPANY

B/S PRESIDENT OR NOMINEE 1295 NORTHLAND DR MENDOTA HEIGHTS, MN 55120-

SERVICE OF PROCESS MAY BE HAD UPON DEFENDANT BY DELIVERING TO THE COMMISSIONER OF INSURANCE, STATE OF TEXAS, TRIPLICATE
COPIES OF THIS CITATION TOGETHER WITH TRIPLICATE COPIES OF THE PLAINTIFF'S PETITION ATTACHED HERETO.

You said DEFENDANT are hereby commanded to appear by filing a written answer to the PLAINTIFF'S ORIGINAL PETITION
at or before 10 o'clock A.M. of the Monday next after
the expiration of 20 days after the date of service hereof before the 67th District Court
,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas
said PLAINTIFF being

BRYAN C WAGNER

Filed in said Court on February 28th, 2017 Against
NORTHFIELD INSURANCE COMPANY

For suit, said suit being numbered 067-290721-17 the nature of which demand is as shown on said
PLAINTIFF'S ORIGINAL PETITION  a copy of which accompanies this citation.

**MARSHALL M SEARCY, JR**
Attorney for BRYAN C WAGNER Phone No. (817)332-2500
Address      201 MAIN ST STE 2500 FORT WORTH, TX 76102

_____ Thomas A. Wilder _____ , Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal
of said Court, at office in the City of Fort Worth, this the 1st day of March, 2017.

By *Anthony Ferrara*
ANTHONY FERRARA

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

**OFFICER'S RETURN *06729072117000004***

Received this Citation on the _2nd_ day of _MARCH_ , _2017_ at _8:00_ o'clock _A_ M; and executed at
_____ within the county of _____ , State of _____ at _____ o'clock ___M
on the _____ day of _____ , _____ by delivering to the within named (Def.): _____
defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFF'S ORIGINAL PETITION
, having first endorsed on same the date of delivery.


          Authorized Person/Constable/Sheriff: _____
          County of _____ State of_____ By _____ Deputy
Fees $_____          _____
State of _____ County of _____ (Must be verified if served outside the State of Texas)
Signed and sworn to by the said _____ before me this _____ day of _____ , ____
to certify which witness my hand and seal of office
(Seal)          _____
          County of _____ , State of _____

## CITATION

Cause No. 067-290721-17

BRYAN C. WAGNER

VS.

NORTHFIELD INSURANCE
COMPANY

ISSUED

This 1st day of March, 2017

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By        ANTHONY FERRARA Deputy

MARSHALL M SEARCY, JR
Attorney for: BRYAN C WAGNER
Phone No. (817)332-2500
ADDRESS: 201 MAIN ST STE 2500

FORT WORTH, TX 76102

## CIVIL LAW



*06729072117000004*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
SERVICE COPY

FILED
TARRANT COUNTY
2/28/2017 4:29:42 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 067-290721-17 _____

| | | |
|---|---|---|
| BRYAN C. WAGNER | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | |
| | § | TARRANT COUNTY, TEXAS |
| NORTHFIELD INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| **Defendant.** | § | |
| | § | __TH JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Bryan C. Wagner ("Wagner" or "Plaintiff") files this Original Petition against Defendant Northfield Insurance Company ("Northfield" or "Defendant") and would respectfully show as follows:

### I.
### DISCOVERY CONTROL PLAN

1. Plaintiff requests that this case be governed by a Level 3 Discovery Control Plan as set forth in Texas Rule of Civil Procedure 190.

### II.
### CLAIM FOR RELIEF

2. Plaintiff seeks monetary relief of $1,000,000 or more and any other relief to which Plaintiff may show himself justly entitled.

### III.
### PARTIES

3. Plaintiff Bryan C. Wagner is an individual who resides in Tarrant County, Texas.

4. Defendant Northfield is an Iowa surplus lines carrier with its principal place of business in Connecticut. Because Northfield does not appoint or maintain a registered agent in

1

Texas, it may be served with process through the Commissioner of Insurance, Texas Department of Insurance, P.O. Box 149104, Austin, TX 78714-9104. Additionally, pursuant to the Service of Suit Endorsements attached to General Liability Policy No. NN100227 and Umbrella Liability Policy No. NU101368, Northfield may also be served through its President or his nominee, at 1295 Northland Drive, Mendota Heights, MN 55120.

## IV.
## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this dispute because the damages and relief sought are within the jurisdictional limits of this Court. At this time, Wagner seeks monetary relief of $1,000,000 or more and any other relief to which Wagner may show himself justly entitled. Wagner's damages, however, will increase as Wagner incurs additional attorneys' fees as a result of Northfield's wrongful conduct.

6.      The Court has personal jurisdiction over Northfield because it regularly transacts business in the State of Texas and has had systematic and continuous contacts with the State of Texas. Additionally and alternatively, the Court has personal jurisdiction over Northfield because the causes of action asserted herein arise from and directly relate to Northfield's transaction of business with Wagner within the State of Texas.

7.      Venue is proper in Tarrant County because a substantial part of the events or omissions giving rise to Wagner's claims occurred in Tarrant County and, alternatively, because Wagner resides in Tarrant County. TEX. CIV. PRAC. & REM. CODE § 15.002(a).

## V.
## BACKGROUND FACTS

1.     Wagner obtained several insurance policies from Northfield, including Commercial General Liability Policy No. NN100227 ("General Liability Policy") (a true and correct copy is attached hereto as Exhibit A) and Commercial Umbrella Liability Policy No. NU101368 ("Umbrella Policy") (a true and correct copy is attached hereto as Exhibit B) (collectively, the "Policies"). These Policies provided coverage to Wagner for the policy period January 31, 1999 to January 31, 2000.

2.     A premium of $17,648.00 was paid for the General Liability Policy, which provided Wagner with no less than $1,000,000.00 in indemnity insurance coverage per occurrence and unlimited defense insurance coverage. Wagner is a named insured under the General Liability Policy.

3.     A premium of $13,375.00 was paid for the Umbrella Policy, which provided Wagner with no less than $10,000,000.00 in insurance coverage per occurrence. Wagner is a named insured under the Umbrella Policy.

4.     The Policies provide coverage for, among other things, "property damage" and "insured contractual liability."

5.     In September 2009, ExxonMobil Corporation ("Exxon") filed suit against Wagner, Duer Wagner III, Trade Exploration Corp., and James Finley (collectively, the "Wagner Group") in Texas state court in the action styled *ExxonMobil Corp. v. Trade Exploration Corp., et al.*, No. 09-60726, currently pending in the 189th Judicial District Court for Harris County, State of Texas, claiming the Wagner Group owed contractual indemnity and a duty to defend

Exxon against various claims and liabilities in three underlying Louisiana legacy suits.[1] The underlying Louisiana legacy suits allege, among other things, property damage.

6.    The ExxonMobil suit alleges, among other things, that Wagner's contractual indemnity obligation arises from an "Assignment, Bill of Sale and Quitclaim." The "Assignment, Bill of Sale and Quitclaim" obligates Wagner "to indemnify, hold harmless and defend [Exxon] from and against all damages, losses, claims, demands, and causes of action … brought by any and all persons … on account of any personal injury, death, damage, destruction, [or] loss of property" and "to indemnify, defend and hold [Exxon] harmless from any and all claims, causes of action, fines, expenses, costs, losses, and liabilities whatsoever in connection with the environmental condition of the assigned property or other property affected thereby . . . ." The allegations asserted against Wagner in the ExxonMobil suit are covered under the Polices thereby triggering Northfield's duty to defend.

7.    A previous determination has been made that the Policies provide coverage, for among other things, insured contractual liability. Likewise, a previous determination has been made that Northfield's duty to defend is not negated under either the application of: (1) the "Pollution Exclusion"; or (2) the "Contractual Liability Exclusion." Moreover, a determination has been made that the ExxonMobil pleading allegations trigger an exception to the "Contractual Liability Exclusion."

8.    On or about April 4, 2011, in compliance with the terms and conditions of the Policies, Wagner (through his insurance broker) submitted a request for insurance benefits in

---

[1] Previously, in 1994, the Wagner Group had acquired certain oil and gas interests in Louisiana from Exxon. The three underlying "legacy lawsuits" are – *M.J. Farms, Ltd v. ExxonMobil Corp., et. al.*, Case No. 24055, in the 7th Judicial District Court for the Parish of Catahoula, State of Louisiana; *Agri-South Group, L.L.C., et. al. v. ExxonMobil Corp., et al.*, Case No. 24132, in the 7th Judicial District Court for the Parish of Catahoula, State of Louisiana; *Avahoula Resources, L.L.C. v. ExxonMobil Corp., et al.*, Case No. 24625, in the 7th Judicial District Court for the Parish of Catahoula, State of Louisiana – in which both ExxonMobil and Wagner are Defendants.

connection with the ExxonMobil suit to Northfield.[2]  On August 17, 2011, Wagner provided Northfield with additional information requested by Northfield in connection with its coverage analysis, notwithstanding the coverage analysis was limited to a comparison of the Policies and pleadings.

9.  Over three years later, on October 17, 2014, Northfield belatedly responded and wrongfully denied Wagner's request for insurance benefits.

10.  To date, Wagner has incurred over $1.26 million in uncompensated attorneys' fees and costs associated with the ExxonMobil suit for which Northfield is responsible pursuant to its duty to defend Wagner.

11.  Because of Northfield's wrongful conduct in refusing to reimburse Wagner, Wagner has been forced to carry the uncompensated costs incurred in defense of the ExxonMobil suit.

12.  Wagner is entitled to insurance benefits under the Northfield Policies.  Wagner has complied with all conditions precedent under the Policies, and all conditions precedent to recovery have occurred, been performed, or been excused.

## VI.
## CAUSES OF ACTION

**A.  Declaratory Judgment.**

13.  All prior paragraphs are incorporated herein by reference.

14.  Pursuant to the Uniform Declaratory Judgment Act, Chapter 37 of the Texas Civil Practice and Remedies Code, Wagner requests that the Court declare the parties' respective rights and obligations under the Policies.  Specifically, Wagner seeks a declaration that Northfield has a contractual duty to defend Wagner in connection with the ExxonMobil suit.

---

[2] Notice was provided directly to Travelers, of which Northfield Insurance Company is an indirect subsidiary. For ease of reference, Northfield and Travelers will collectively be referred to as "Northfield."

PLAINTIFF'S ORIGINAL PETITION                                                                 PAGE 5
2376676_4

15.     Plaintiff's demand for defense and reimbursement of defense costs under the Policies is a real, actual, and justiciable controversy.

**B.     Breach of Contract.**

16.     All prior paragraphs are incorporated herein by reference.

17.     Northfield breached its contractual duties owed to Wagner under the Policies.

18.     Northfield has a contractual duty to defend Wagner in connection with the ExxonMobil suit.   There is no policy exclusion that negates Northfield's defense coverage obligations and/or the pleading allegations trigger Northfield's defense coverage obligations under an exception to a policy exclusion.  Wagner properly notified Northfield of his claim for coverage, yet Northfield denied coverage and has refused to comply with its obligations.

19.     Wagner has suffered substantial damages as a proximate cause of Northfield's material breaches of the Policies.  These damages include the costs associated with the defense of the ExxonMobil suit that remain uncompensated.   Wagner is entitled to recover the full amount due under the Policies including all attorneys' fees, costs, and expenses.

**C.     Violations of the Prompt Payment of Claims Subchapter of the Texas Insurance Code.**

20.     All prior paragraphs are incorporated herein by reference.

21.     Northfield failed to comply with the prompt payment of claims provisions of the Texas Insurance Code (§§ 542.051-542.061) by failing to timely accept, reject, or extend the deadline for deciding Wagner's claim and by unreasonably delaying payment of Wagner's benefits under the Policies.  Northfield unreasonably withheld such benefits despite having received all items, statements and forms reasonably requested and required for a period of over 60 days.

PLAINTIFF'S ORIGINAL PETITION
2376676_4

PAGE 6

22.     By not complying with the prompt payment provisions of the Texas Insurance Code, Northfield is subject to a statutory penalty of 18% interest per annum on the total amount of Wagner's damages and benefits under the above-referenced policies, which Wagner hereby seeks to recover.  This statutory penalty is in addition to Wagner's attorneys' fees and expenses incurred in prosecuting this suit.

**E.      Attorneys' Fees.**

23.     All prior paragraphs are incorporated herein by reference.

24.     Northfield's wrongful conduct has forced Wagner to retain the undersigned attorneys to prosecute these claims.   Wagner has demanded that Northfield perform its contractual obligations under the Policies but Northfield has refused.   Wagner is therefore entitled to recover his reasonable and necessary attorneys' fees and costs in prosecuting this action under § 37.009 of the Texas Civil Practices and Remedies Code, § 38.001 of the Texas Civil Practices and Remedies Code, and § 542.060 of the Texas Insurance Code.

## VII.
## JURY DEMAND

25.     Wagner requests a jury trial on all questions of fact in this lawsuit pursuant to Texas Rule of Civil Procedure 216.  Wagner is submitting the requisite jury fee along with this Original Petition.

## VIII.
## NORTHFIELD'S POLICY INTERPRETATION IS INCORRECT AND UNREASONABLE

26.     Wagner contends his interpretation of the relevant provisions of the Policies is the only reasonable interpretation.  Alternatively, to the extent that Northfield's interpretation could also be considered reasonable, then in that circumstance Wagner alleges that the Policies are ambiguous and that such ambiguity must be resolved in favor of the insured, Wagner.

PLAINTIFF'S ORIGINAL PETITION                                                                          PAGE 7
2376676_4

NOTICE OF REMOVAL EXHIBIT 2

## IX.
## CONDITIONS PRECEDENT

27.     All conditions precedent have been performed or have occurred as required.

## X.
## REQUEST FOR DISCLOSURE

28.     Under Texas Rule of Civil Procedure 194, Wagner requests that Northfield disclose, within 50 days of the service of this request, the information or material described in Rule 194.2 .

## XI.
## PRAYER FOR RELIEF

29.     Wagner prays that upon trial of the merits, the Court enter judgment in Wagner's favor on all claims asserted herein, including without limitation:

   (a)     declaratory relief providing that Northfield has a contractual duty to defend Wagner in the ExxonMobil Lawsuit

   (b)     actual damages as set forth above;

   (c)     reasonable and necessary attorneys' fees and costs incurred in connection with Wagner's claims against Northfield;

   (d)     costs of Court;

   (e)     pre- and post-judgment interest at the maximum rate allowed by law; and

   (f)     all other and further relief to which Plaintiff is justly entitled, whether at law or in equity.

Respectfully submitted,

*/s/  Marshall M. Searcy*

Marshall M. Searcy, Jr.
State Bar No. 17955500
marshall.searcy@kellyhart.com
Scott R. Wiehle
State Bar No. 24043991
scott.wiehle@kellyhart.com
Derek W. Anderson
State Bar No. 24012215
derek.anderson@kellyhart.com
Whitney D. Beckworth
State Bar No. 24087400
whitney.beckworth@kellyhart.com
KELLY HART & HALLMAN
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:  (817) 332-2500
Facsimile:  (817) 878-9462

ATTORNEYS FOR BRYAN C. WAGNER


**Northland**
Insurance Companies

## COMMERCIAL GENERAL LIABILITY
## POLICY DECLARATIONS

COVERAGE IS PROVIDED BY:
NORTHFIELD INSURANCE COMPANY

**Policy No. NN100227**

**Policy Period:** From **January 31, 1999** to **January 31, 2000**

**Renewal of NEW No.**

at 12:01 A.M. Standard Time at your mailing address shown below.

Named Insured and Mailing Address: **Wagner Oil Company**
**3400 City Center Tower II**
**Ft. Worth, Texas 76102**

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $2,000,000 |
| Products-Completed Operations Aggregate Limit | $1,000,000 |
| Underground Resources & Equipment Hazard Aggregate Limit | $1,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Fire Damage Limit | $ 100,000 Any One Fire |
| Medical Expense Limit | $ 5,000 Any One Person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:
[ ] Individual  [ ] Joint Venture  [ ] Partnership  [ ] LLC  [x] Organization (Other than Partnership or Joint Venture)

Business Description: [x] Lease Operator/Non Operator  [ ] Drilling/Workover Contractor  [ ] Service Contractor

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### PREMIUM

| Classification | Code No. | Premium Basis | Rate Pr/CO | All Other | Advance Premium Pr/CO | All Other |
|---|---|---|---|---|---|---|
| (See Adjustable Rate Endorsement) | | | | | | |

| | | |
|---|---|---|
| Minimum Premium (per annum) | $ | 15,912.00 |
| Premium Payable at Inception (see Minimum Earned Premium Endorsement) | $ | 17,648.00 |
| Auto Non-Ownership Liability (separate Minimum Premium) | $ | N/A |
| Policy Fee | $ | 500.00 |
| Texas State Tax | $ | 880.18 |
| Texas Stamping Fee | $ | 27.22 |
| Total Payable at Inception | $ | 19,055.40 |

### FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage part and made part of this policy at time of issue:

| | | | | |
|---|---|---|---|---|
| P651-OG (10-97) | P604-OG (10-97) | P588-OG (10-97) | P611-OG (2-98) | P593-OG (10-97) |
| P664-OG (10-97) | CG 22 57 01 96 | P592-OG (10-97) | P613-OG (10-97) | S1030-IL (6/94) |
| P650-OG (10-97) | P608-OG (10-98) | P598-OG (10-97) | P595-OG (10-97) | IL 02 75 (06/95) |
| CG 03 00 01 96 | P584-OG (10-97) | P599-OG (10-97) | P589-OG (10-97) | Endorsement No. 1 |
| P663-OG (10/97) | P614-OG (10-97) | P602-OG (10-97) | P590-OG (10-97) | |
| CG 02 12 11 85 | P585-OG (10-97) | P603-OG (10-97) | P618-OG (10-97) | |
| CG 21 47 10 93 | P587-OG (10-97) | P605-OG (10-97) | P596-OG (10-97) | |

Countersigned: AGENCY #049000
**Burke-Daniels Co., Inc.**
P. O. Box 36069
**Houston, Texas 77236-6069**

By:_____
Authorized Representative

**EXHIBIT**
**A**

NOTICE OF REMOVAL EXHIBIT 2

CERTIFIED POLICY

This certification is affixed to a policy which is a true and
accurate copy of the document in the company's
business records as of the date shown below.

No additional insurance is afforded by this copy.

Northfield Insur.

Name of Insuring Company

NN100227          3-6-14

Policy Number                    Date

Ken Kupec

Kenneth Kupec, Second Vice President
BI Document Management

# Northland Insurance
### A Travelers Company

# COMMERCIAL INSURANCE
# POLICY FOR
# OIL AND GAS OPERATIONS

Administered by:  Burke-Daniels Co., Inc.
9301 Southwest Freeway, Suite 500
Houston, TX 77074
Phone: (713) 981-3900    Fax: (713) 981-3999

**Northfield Insurance Company**
1295 Northland Drive
Mendota Heights, Minnesota 55120
1-800-237-9334

Stock Company

P651-OG (10/97)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (Broad Form)

This endorsement modifies insurance provided under the following:

Commercial Auto/Garage Coverage Part
Commercial General Liability Coverage Part
Products/Completed Operations Liability Coverage Part

Owners and Contractors Protective Liability Coverage Part
Commercial Professional Liability Coverage Part
Businessowners Liability Coverage Form

1. This insurance does not apply:
   A. Under any Liability Coverage to "bodily injury" or "property damage";
      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.
   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:
      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;
      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or
      (3) The "personal injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties;
   "nuclear material" means "source material," "special nuclear material," or "by-product material";
   "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";
   "waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."
   "nuclear facility" means:
      (a) Any "nuclear reactor";
      (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";
      (c) Any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
      (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
   "property damage" includes all forms of radioactive contamination of property.

COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A. CANCELLATION
   1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
   2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
      a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
      b. 30 days before the effective date of cancellation if we cancel for any other reason.
   3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
   4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
   5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
   6. If notice is mailed, proof of mailing will be sufficient proof of notice.
B. CHANGES
   This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.
C. EXAMINATION OF YOUR BOOKS AND RECORDS
   We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. INSPECTIONS AND SURVEYS
   We have the right but are not obligated to:
   1. Make inspections and surveys at any time;
   2. Give you reports on the conditions we find; and
   3. Recommend changes.
   Any inspections, surveys, reports or recommendations relate only to insurability. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   1. Are safe or healthful; or
   2. Comply with laws, regulations, codes or standards.
   This condition applies not only to us, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports or recommendations.
E. PREMIUMS
   The first Named Insured shown in the Declarations:
   1. Is responsible for the payment of all premiums; and
   2. Will be the payee for any return premiums we pay.
F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY
   Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.
   If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative for us.

_Jar M. Mulhern_
Secretary

_Douglas S Elliot_
President

NOTICE OF REMOVAL EXHIBIT 2



# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words **"you"** and **"your"** refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words **"we," "us"** and **"our"** refer to the company providing this insurance.

The word **"insured"** means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES
### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. **We** will pay those sums that the **insured** becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **We** will have the right and duty to defend any "suit" seeking those damages. **We** may at **our** discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount **we** will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) **Our** right and duty to defend end when **we** have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the **insured**. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.   Contractual Liability**

"Bodily injury" or "property damage" for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)   That the **insured** would have in the absence of the contract or agreement.

(2)   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be damages because of "bodily injury" or "property damage," provided:

(a)   Liability to such party for, or the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.   Liquor Liability**

"Bodily injury" or "property damage" for which any **insured** may be held liable by reason of:

(1)   Causing or contributing to the intoxication of any person;

(2)   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if **you** are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.   Workers Compensation and Similar Laws**

Any obligation of the **insured** under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e.   Employer's Liability**

"Bodily injury" to:

(1)   An "employee" of the **insured** arising out of and in the course of:

(a)   Employment by the **insured**; or

(b)   Performing duties related to the conduct of the insured's business; or

(2)   The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1)   Whether the **insured** may be liable as an employer or in any other capacity; and

NOTICE OF REMOVAL/EXHIBIT 2

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the **insured** under an "insured contract."

**f.    Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**;

    (b) At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated disposed of, or processed as waste by or for any **insured** or any person or organization for whom **you** may be legally responsible; or

    (d) At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        (i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

        (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

    Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

    As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g.    Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any **insured**. Use includes operation and "loading or unloading."

This exclusion does not apply to:

(1) A watercraft while ashore on premises **you** own or rent;

(2) A watercraft **you** do not own that is:

    (a) Less than 26 feet long; and

Northfield 000008

(b)   Not being used to carry persons or property for a charge;

(3)   Parking an "auto" on, or on the ways next to, premises **you** own or rent, provided the "auto" is not owned by or rented or loaned to **you** or the **insured;**

(4)   Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

**h.   Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1)   The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any **insured;** or

(2)   The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.   War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j.   Damage to Property**

"Property damage" to:

(1)   Property **you** own, rent or occupy;

(2)   Premises **you** sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)   Property loaned to **you;**

(4)   Personal property in the care, custody or control of the **insured;**

(5)   That particular part of real property on which **you** or any contractors or subcontractors working directly or indirectly on **your** behalf are performing operations, if the "property damage" arises out of those operations; or

(6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by **you.**

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

Northfield 000007

**k.   Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.   Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

**m.   Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)   A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.   Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)   "Your product";

(2)   "Your work"; or

(3)   "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.   Insuring Agreement**

**a.   We** will pay those sums that the **insured** becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. **We** will have the right and duty to defend any "suit" seeking those damages. **We** may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1)   The amount **we** will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2)   **Our** right and duty to defend end when **we** have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

**b.   This insurance applies to:**

Northfield 000008

NOTICE OF REMOVAL EXHIBIT 2

    (1)  "Personal Injury" caused by an offense arising out of **your** business, excluding advertising, publishing, broadcasting or telecasting done by or for **you**;

    (2)  "Advertising injury" caused by an offense committed in the course of advertising **your** goods, products or services;

but only if offense was committed in the "coverage territory" during the policy period.

**2.  Exclusions**

This insurance does not apply to:

  a.  "Personal injury" or "advertising injury":

    (1)  Arising out of oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity;

    (2)  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

    (3)  Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **insured**; or

    (4)  For which the **insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

  b.  "Advertising injury" arising out of:

    (1)  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    (2)  The failure of goods, products or services to conform with advertised quality or performance;

    (3)  The wrong description of the price of goods, products or services; or

    (4)  An offense committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting.

**COVERAGE C. MEDICAL PAYMENTS**

**1.  Insuring Agreement**

  a.  **We** will pay medical expenses as described below for "bodily injury" caused by an accident:

    (1)  On premises **you** own or rent;

    (2)  On ways next to premises **you** own or rent; or

    (3)  Because of **your** operations;

provided that:

    (1)  The accident takes place in the "coverage territory" and during the policy period;

    (2)  The expenses are incurred and reported to **us** within one year of the date of the accident; and

    (3)  The injured person submits to examination, at **our** expense, by physicians of **our** choice as often as **we** reasonably require.

  b.  **We** will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. **We** will pay reasonable expenses for:

    (1)  First aid administered at the time of an accident;

    (2)  Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3)  Necessary ambulance, hospital, professional nursing and funeral services.

**2.   Exclusions**

We will not pay expenses for "bodily injury":

a.   To any **insured**.

b.   To a person hired to do work for or on behalf of any **insured** or a tenant of any **insured**.

c.   To a person injured on that part of premises **you** own or rent that the person normally occupies.

d.   To a person, whether or not an "employee" of any **insured**, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e.   To a person injured while taking part in athletics.

f.   Included within the "products-completed operations hazard."

g.   Excluded under Coverage A.

h.   Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1.   All expenses **we** incur.

2.   Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. **We** do not have to furnish these bonds.

3.   The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. **We** do not have to furnish these bonds.

4.   All reasonable expenses incurred by the **insured** at **our** request to assist **us** in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5.   All costs taxed against the **insured** in the "suit."

6.   Prejudgment interest awarded against the **insured** on that part of the judgment we pay. If **we** make an offer to pay the applicable limit of insurance, **we** will not pay any prejudgment interest based on that period of time after the offer.

7.   All interest on the full amount of any judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1.   If **you** are designated in the Declarations as:

    a.   An individual, **you** and **your** spouse are insureds, but only with respect to the conduct of a business of which **you** are the sole owner.

NOTICE OF REMOVAL EXHIBIT 2

   b.   A partnership or joint venture, **you** are an **insured**. **Your** members, **your** partners, and their spouses are also insureds, but only with respect to the conduct of **your** business.

   c.   An organization other than a partnership or joint venture, **you** are an **insured**. **Your** "executive officers" and directors are insureds, but only with respect to their duties as **your** officers or directors. **Your** stockholders are also insureds, but only with respect to their liability as stockholders.

2.   Each of the following is also an **insured**:

   a.   **Your** "employees," other than **your** "executive officers," but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business. However, no "employee" is an **insured** for:

      (1)   "Bodily injury" or "personal injury":

         (a)   To **you**, to **your** partners or members (if **you** are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of **your** business;

         (b)   To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c)   For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d)   Arising out of his or her providing or failing to provide professional health care services.

      (2)   "Property damage" to property:

         (a)   Owned, occupied or used by,

         (b)   Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      **you**, any of **your** "employees" or, if **you** are a partnership or joint venture, by any partner or member.

   b.   Any person (other than **your** "employee"), or any organization while acting as **your** real estate manager.

   c.   Any person or organization having proper temporary custody of **your** property if **you** die, but only:

      (1)   With respect to liability arising out of the maintenance or use of that property; and

      (2)   Until **your** legal representative has been appointed.

   d.   **Your** legal representative if **you** die, but only with respect to duties as such. That representative will have all **your** rights and duties under this Coverage Part.

3.   With respect to "mobile equipment" registered in **your** name under any motor vehicle registration law, any person is an **insured** while driving such equipment along a public highway with **your** permission. Any other person or organization responsible for the conduct of such person is also an **insured**, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an **insured** with respect to:

   a.   "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b.   "Property damage" to property owned by, rented to, in the charge of or occupied by **you** or the employer of any person who is an **insured** under this provision.

Northfield 000212

4.   Any organization **you** newly acquire or form, other than a partnership or joint venture, and over which **you** maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a.   Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier;

    b.   Coverage A does not apply to "bodily injury" or "property damage" that occurred before **you** acquired or formed the organization; and

    c.   Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before **you** acquired or formed the organization.

No person or organization is an **insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1.   The Limits of Insurance shown in the Declarations and the rules below fix the most **we** will pay regardless of the number of:

    a.   Insureds;

    b.   Claims made or "suits" brought; or

    c.   Persons or organizations making claims or bringing "suits."

2.   The General Aggregate Limit is the most **we** will pay for the sum of:

    a.   Medical expenses under Coverage C;

    b.   Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c.   Damages under Coverage B.

3.   The Products-Completed Operations Aggregate Limit is the most **we** will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4.   Subject to 2. above, the Personal and Advertising Injury Limit is the most **we** will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5.   Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most **we** will pay for the sum of:

    a.   Damages under Coverage A; and

    b.   Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6.   Subject to 5. above, the Fire Damage Limit is the most **we** will pay under Coverage A for damages because of "property damage" to premises, while rented to **you** or temporarily occupied by **you** with permission of the owner, arising out of any one fire.

7.   Subject to 5. above, the Medical Expense Limit is the most **we** will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy

period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the **Insured** or of the insured's estate will not relieve **us** of **our** obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. **You** must see to it that **we** are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any **Insured, you** must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify **us** as soon as practicable.

      **You** must see to it that **we** receive written notice of the claim or "suit" as soon as practicable.

   c. **You** and any other involved **Insured** must:

      (1) Immediately send **us** copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize **us** to obtain records and other information;

      (3) Cooperate with **us** in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without **our** consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join **us** as a part or otherwise bring **us** into a "suit" asking for damages from an **insured**; or

   b. To sue **us** on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against an **insured** obtained after an actual trial; but **we** will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the **insured** for a loss we cover under Coverages A or B of this Coverage Part, **our** obligations are limited as follows:

**a.  Primary Insurance**

This insurance is primary except when b. below applies.  If this insurance is primary, **our** obligations are not affected unless any of the other insurance is also primary.  Then, **we** will share with all that other insurance by the method described in c. below.

**b.  Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis;

(1)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2)  That is Fire insurance for premises rented to **you**; or

(3)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, **we** will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend.  If no other insurer defends, **we** will undertake to do so, but **we** will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, **we** will pay only **our** share of the amount of the loss, if any, that exceeds the sum of:

(1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  The total of all deductible and self-insured amounts under all that other insurance.

**We** will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.  Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.  Premium Audit**

a.  **We** will compute all premiums for this Coverage Part in accordance with **our** rules and rates.

b.  Premium shown in this Coverage Part as advance premium is a deposit premium only.  At the close of each audit period we will compute the earned premium for that period.  Audit premiums are due and payable on notice to the first Named Insured.  If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, **we** will return the excess to the first Named Insured.

c.  The first Named Insured must keep records of the information we need for premium computation, and send **us** copies at such times as **we** may request.

**6.  Representations**

NOTICE OF REMOVAL EXHIBIT 2

By accepting this policy, **you** agree:

a.   The statements in the Declarations are accurate and complete;

b.   Those statements are based upon representations **you** made to **us**; and

c.   **We** have issued this policy in reliance upon **your** representations.

7.   **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.   As if each Named Insured were the only Named Insured; and

b.   Separately to each **insured** against whom claim is made or "suit" is brought.

8.   **Transfer Of Rights Of Recovery Against Others To Us**

If the **insured** has rights to recover all or part of any payment **we** have made under this Coverage Part, those rights are transferred to **us**. The **insured** must do nothing after loss to impair them. At **our** request, the **insured** will bring "suit" or transfer those rights to **us** and help **us** enforce them.

9.   **When We Do Not Renew**

If **we** decide not to renew this Coverage Part, **we** will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1.  "Advertising injury" means injury arising out of one or more of the following offenses:

    a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.  Oral or written publication of material that violates a person's right of privacy;

    c.  Misappropriation of advertising ideas or style of doing business; or

    d.  Infringement of copyright, title or slogan.

2.  "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3.  "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.  International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    c.  All parts of the world if:

        (1)  The injury or damage arises out of:

            (a)  Goods or products made or sold by you in the territory described in a. above; or

            (b)  The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

        (2)  The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5.  "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7.  "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangers; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.  Your fulfilling the terms of the contract or agreement.

8.  "Insured contract" means:

a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner is not an "insured contract";

b.  A sidetrack agreement;

c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.  An elevator maintenance agreement;

f.  That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1)  That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)  Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3)  Under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

9.  "Leased worker" means a person leased to **you** by a labor leasing firm under an agreement between **you** and the labor leasing firm, to perform duties related to the conduct of **your** business. "Leased worker" does not include a "temporary worker."

10.  "Loading or unloading" means the handling of property:

a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b.  While it is in or on an aircraft, watercraft or "auto"; or

c.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

11.  "Mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, which is:

(1)  not subject to motor vehicle registration, or

(2)  maintained for use exclusively on premises owned by or rented to **you**, including the ways immediately adjoining, or

(3)  designed for use principally off public roads, or

(4)  designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.

12.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13.  "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e.  Oral or written publication of material that violates a person's right of privacy.

14.  a.  "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)  Products that are still in your physical possession; or

(2)  Work that has not yet been completed or abandoned.

b.  "Your work" will be deemed completed at the earliest of the following times:

(1)  When all of the work called for in your contract has been completed.

(2)  When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need services, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c.  This hazard does not include "bodily injury" or "property damage" arising out of:

(1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)  Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

NOTICE OF REMOVAL EXHIBIT 2

15. "Property damage" means:

    a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

    b.   Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a.   An arbitration proceeding in which such damages are claimed and to which **you** must submit or do submit with **our** consent; or

    b.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which **you** submit with **our** consent.

17. "Your product" means:

    a.   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)   **You**;

        (2)   Others trading under your name; or

        (3)   A person or organization whose business or assets **you** have acquired; and

    b.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    b.   The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

18. "Temporary worker" means a person who is furnished to **you** to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

19. "Your work" means:

    a.   Work or operations performed by **you** or on **your** behalf; and

    b.   Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    b.   The providing of or failure to provide warnings or instructions.

Northfield 000020

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 03 00 01 96

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| 12:01 A.M. standard time | |
| Named Insured | Countersigned by |

(Authorized Representative)

## SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
|---|---|---|---|
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $(N/A) | | $(N/A) |
| OR | | | |
| Property Damage Liability | $(N/A) | | $(N/A) |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $(N/A) | | $5,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

1. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

2. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

   a. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

      (1) Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   (2) Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

   (3) Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (a) "Bodily injury";

      (b) "Property damage"; or

      (c) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

CG 03 00 01 96

Copyright, Insurance Services Office, Inc.

Page 1 of 2

NOTICE OF REMOVAL EXHIBIT 2

With respect to "property damage", person includes an organization.

b. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

(1) Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

(2) Under Property Damage Liability Coverage, to all damages because of "property damage"; or

(3) Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

    (a) "Bodily injury";

    (b) "Property damage"; or

    (c) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. The terms of this insurance, including those with respect to:

(a) Our right and duty to defend any "suits" seeking those damages; and

(b) Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc.

Northfield 000322



**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE      January 31, 1999         \*and is part of Policy Number:   NN100227

\*issued to: Wagner Oil Company

\*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

### MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS IN THIS POLICY

This policy is subject to a minimum earned premium.

If this policy is canceled at **your** request, **you** agree with **us**:

1.   That the minimum earned premium for this policy is the greater of $1,000 or 25% of the Total Premium;

2.   That such minimum earned premium is not subject to short rate or pro-rate adjustment; and

3.   That cancellation for non-payment of premium, after the effective date of the policy, shall be deemed a request by
     you for cancellation of this policy and will activate this minimum earned premium provision.

All other terms and conditions remain unchanged.

BY:_____

P663-OG (10/97)

NOTICE OF REMOVAL EXHIBIT 2

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CANCELLATION BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Number of Days**   60

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement).

Paragraph 2. of CANCELLATION (Common Policy Conditions) is replaced by the following:

2.   We may cancel this Coverage Part by mailing or delivering to the first Named **Insured** written notice of cancellation at least:

   a.   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b.   The number of days shown in the Schedule before the effective date of cancellation if **we** cancel for any other reason.

Copyright, Insurance Services Office, Inc.

Northfield 000273

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following . exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I - . Coverages):

This insurance does not apply to:

"Personal injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc.
Northfield 000024

NOTICE OF REMOVAL EXHIBIT 2

 **Northland**
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE      January 31, 1999      *and is part of Policy Number:   NN100227

*Issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## LIMITATION OF COVERAGE TO DESIGNATED
## PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Premises:**

**Project:**  ANY OPERATION(S) CONTEMPLATED BY THE STATISTICAL CODES SHOWN IN THE ADJUSTABLE
RATE ENDORSEMENT ON THE POLICY AT INCEPTION OR ADDED BY ENDORSEMENT(S). COVERAGE
IS LIMITED TO THOSE OPERATIONS IDENTIFIED ON THE ADJUSTABLE RATE ENDORSEMENT,
HOWEVER, COVERAGE WILL ALSO APPLY TO ANCILLARY OR INCIDENTAL OIL AND/OR GAS
OPERATIONS WHETHER SUCH OPERATIONS ARE CLASSIFIED OR NOT.

COVERAGE PROVIDED IN SECTION II-WHO IS AN INSURED, PARAGRAPH 4. IS NOT AFFECTED BY
APPLICATION OF THIS ENDORSEMENT.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as
applicable to this endorsement.)

This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical
expenses arising out of:

1.   The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to
those premises; or

2.   The project shown in the Schedule.

All other terms and conditions remain unchanged.

BY:_____

P604-OG (10/97)

Northfield 000075

NOTICE OF REMOVAL EXHIBIT 2

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 22 57 01 96

# EXCLUSION - UNDERGROUND RESOURCES AND EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

Description of Operations:

Gasoline Recovery - from casing head or natural gas
Oil or Gas Lease Operations - natural gas
Oil or Gas Lease Operations - natural gas - within the limits of any town or city, on the right-of-way of
  any railroad, or in any ocean, gulf or bay
Oil or Gas Wells - cleaning or swabbing by contractors
Oil or Gas Wells - cleaning or swabbing by contractors - within the limits of any town or city, on the
  right-of-way of any railroad, or in any ocean, gulf or bay
Oil or Gas Wells - drilling or redrilling, installation or recovery of casing
Oil or Gas Wells - drilling or redrilling, installation or recovery of casing - within the limits of any town or
  city, on the right-of-way of any railroad
Oil or Gas Wells - non-operating working interest
Oil or Gas Wells - servicing - by contractors
Oil or Gas Wells - shooting

With respect to operations shown in the Schedule

A. The following exclusions are added to Section I - COVERAGES (BODILY INJURY AND PROPERTY DAMAGE LIABILITY):

This insurance does not apply to:

1. "Property damage" included within the "underground resources and equip-ment hazard"; or

2. The cost of reducing any property included within the "underground resources and equipment hazard" to physical possession above the surface of the earth or of any body of water, or to the expense incurred or rendered necessary to prevent or minimize "property damage" to other property resulting from acts or omissions causing "property damage" included within the "underground resources and equipment hazard".

B. The following definition is added to the DEFINITIONS Section:

"Underground resources and equipment hazard" includes "property damage" to any of the following:

1. Oil, gas, water, or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

2. Any well, hole, formation, strata, or area in or through which exploration for or production of any substance is carried on; or

3. Any casing, pipe, bit, tool, pump, or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

Copyright, Insurance Services Office, Inc.

Northfield 000373

NOTICE OF REMOVAL EXHIBIT 2

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE        January 31, 1999        *and is part of Policy Number:   NN100227

*issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as th
effective date of the policy.

## UNDERGROUND RESOURCES & EQUIPMENT BUYBACK

This endorsement modifies insurance provided under the following, and as respects the Underground Resources &
Equipment Hazard only, supersedes the Underground Resources & Equipment Exclusion endorsement, Exclusion f.
Pollution and any Pollution endorsement which may be attached to this policy:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Underground Resources & Equipment Hazard Property Damage        $1,000,000 Aggregate Limit

Description of Operations:

Gasoline Recovery - From casing head or natural gas
Oil or Gas Lease Operations - natural gas
Oil or Gas Lease Operations - natural gas - within the limits of any town or city, on the right-of-way of
  any railroad, or in any ocean, gulf or bay
Oil or Gas Wells - cleaning or swabbing by contractors
Oil or Gas Wells - cleaning or swabbing by contractors - within the limits of any town or city, on the
  right-of-way of any railroad, or in any ocean, gulf or bay
Oil or Gas Wells - drilling or redrilling, installation or recovery of casing
Oil or Gas Wells - drilling or redrilling, installation or recovery of casing - within the limits of any town
  or city, on the right-of-way of any railroad
Oil or Gas Wells - servicing - by contractors
Oil or Gas Wells - non-operating interest
Oil or Gas Wells - shooting

This insurance applies to "property damage" included within the "underground resources & equipment hazard"
arising out of the operations performed by you or on your behalf and described in this endorsement:

1.  With respect to "property damage" included within the "underground resources & equipment hazard" the
    following is added to LIMITS OF INSURANCE (Section III):

    8.  Subject to 5. above, the Underground Resources & Equipment Property Damage Aggregate Limit shown
        in the Schedule or in the Declarations as subject to this endorsement is the most **we** will pay under
        Coverage A for the sum of damages because of all "property damage" included within the "underground
        resources & equipment hazard."

Northfield 000073

NOTICE OF REMOVAL EXHIBIT 2

2. The following exclusions are added to COVERAGE A (Section I): This insurance does not apply to:

   a. Any costs or expense incurred by you or at your request or by or at the request of any "co-owner of the working interest" in connection with controlling or bringing under control any oil, gas or water well;

   b. Damages claimed by any "co-owner of the working interest."

3. The following additional definitions apply:

   "Underground resources & equipment hazard" includes "property damage" to any of the following:

   a. Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

   b. Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on;

   c. Any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

   "Co-owner of the working interest" means any person or organization who is, with you, a co-owner, joint venturer or mining partner in mineral properties who:

   a. Participates in the operating expense of such properties; or

   b. Has the right to participate in the control, development or operation of such properties.

4. Upon the "occurrence" of a blow-out or cratering of any oil, gas or water well resulting from or in connection with operations performed by you or on your behalf, you agree that you will at your own cost and expense, promptly and diligently take whatever steps are necessary or legally required of you or necessary for you or any other person to bring such well under control.

   If you delay or fail to comply with this agreement, we will not be liable for any "property damage" included within the "underground resources & equipment hazard" resulting from the blow-out or cratering of any such well.

All other terms and conditions remain unchanged.

BY:_____

Northfield 000028

NOTICE OF REMOVAL EXHIBIT 2

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE        January 31, 1999        *and is part of Policy Number:   NN100227

*Issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## OIL INDUSTRY AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART - ALL CLASS CODES

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy will not apply to:

1. **LOSS OF HOLE**

   Liability for loss of or damage to any well or hole being drilled by **you** or on **your** behalf and/or any well or hole which is in **your** care, custody or control or for which **you** are or may be responsible, and any cost or expense incurred in redrilling or restoring the well or hole or any substitute well or hole.

2. **IN-HOLE EQUIPMENT**

   Liability for loss of or damage to any drilling tool, pipe, collar, casing, bit, pump, drilling or well servicing machinery, or any other equipment, including fishing costs, while below the surface of the earth in any well or hole being drilled by **you** or on **your** behalf and/or in any well or hole which is in **your** care, custody or control or for which **you** are or may be responsible.

   "Fishing costs" mean any cost or expense incurred to recover from a well, any equipment, including but not limited to: drill bits, drill collars, drill pipe, packers, liners, screen pipe, etc.

3. **COST OF CONTROL**

   Liability for costs or expenses incurred in:

   a.   Controlling or bringing under control any wells or holes, or

   b.   Extinguishing fire in or from any such wells or holes, or

   c.   Drilling relief wells or holes, whether or not the relief wells or holes are successful.

   It is further understood and agreed that when any **insured** is an operator or a non-operator as described in the applicable operating agreement, this exclusion shall only apply to an "occurrence" which causes loss to any well(s) and/or holes in which **you** have a working interest.  If, however, any **insured** is not an operator or non-operator as defined in the applicable operating agreement this qualifying paragraph shall not apply.

P584-OG (10/97)

Page 1 of 2

NOTICE OF REMOVAL EXHIBIT 2

4.   **SUBSIDENCE**

Loss of, damage to or loss of use of property directly or indirectly resulting from subsidence caused by any **insured's** subsurface operations.

5.   **CO-OWNER**

This insurance does not apply to any liability damages claimed by any "co-owner of the **working interest**".

"Co-owner of the working interest" means any person or organization who is, with **you**, a co-owner, joint venturer or mining partner in mineral properties who:

a.   Participates in the operating expense of such properties; or

b.   Has the right to participate in the control, development or operation of such properties.

However, it is further understood and agreed that the preceding paragraph shall not under any circumstances be construed to exclude coverage for the liability of co-venturers, partners or co-owners for which **you** are responsible to provide insurance as respects third parties who are not **insureds** under this policy, as defined.

6.   **EXCLUSION - LEAD**

This insurance does not apply to:

a.   "Bodily injury," "property damage," "advertising injury," "personal injury," or medical expense arising out of lead or the hazardous properties of lead.

b.   Any damages for remedial investigations or feasibility studies or the costs of testing, monitoring, abatement, mitigation, cleaning, removal or disposal of lead or any item(s) containing lead.

c.   Any damages arising out of any supervision, instructions, recommendations, requests, warnings, or advice given or which should have been given in connection with b. above.

d.   Any obligation to share damages with or repay someone else who must pay damages in connection with a., b., or c. above.

All other terms and conditions remain unchanged.

BY:_____

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE January 31, 1999 \*and is part of Policy Number: NN100227

\*issued to: Wagner Oil Company

\*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## POLLUTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART - ALL CLASS CODES

Effective at inception and in consideration of the premium charged, it is understood and agreed that SECTION I COVERAGE A., Paragraph 2. Exclusions, sub-paragraph f. Pollution is deleted in its entirety and replaced with the following:

f. Pollution

"Bodily injury", "property damage", "personal injury", loss of, damage to or loss of use of property, or any other form of liability or damages to which any insured may be subject arising out of the actual, alleged, or threatened discharge, dispersal, release, seepage, migration or escape of pollutants at any time at any location by whomsoever caused;

The above exclusion as well as SECTION I COVERAGE A., paragraph 2. Exclusions, sub-paragraph j.(1), and j.(5) do not apply to "bodily injury", "property damage", or "personal injury" if such discharge, dispersal, release or escape meets all five of the following conditions:

 (i) The discharge, dispersal, release or escape must be an accident which was not intended by any insured. However, this condition would not serve to deny coverage for a specific incident where such discharge, dispersal, release or escape of pollutants was a result of an attempt by any insured to mitigate or avoid a situation where third party "bodily injury", "property damage", or "personal injury" could occur; and

 (ii) The beginning of the discharge, dispersal, release or escape must take place during the policy period specified in the Declarations; and

 (iii) The discharge, dispersal, release or escape did not result from **your** willful violation of any government statute, rule or regulation; and

 (iv) The discharge, dispersal, release or escape must become known to **you** within:

  (a) 180 days of its commencement if **you** are acting as a non-operator, as designated in the applicable operating agreement; or

  (b) 90 days of its commencement if **you** are acting as an operator, as designated in the applicable operating agreement; or

  (c) 30 days of its commencement if **you** are acting as anything other than an operator or non-operator, as designated in the applicable operating agreement; and

 (v) The discharge, dispersal, release or escape must be reported in writing to **us** as soon as practicable, but not longer than 90 days from the date of discovery by **you**.

P614-OG (10/97)   Page 1 of 3

Northfield 000238

For purposes of complying with the requirements of this paragraph, notice to us by any Insured constitutes notice by all Insureds.

If any such actual, alleged or threatened discharge, dispersal, release or escape of pollutants results from a well out of control, as defined herein, coverage provided by this endorsement will always apply excess of the limits provided under an insured's control of well policy, as applicable.

Nothing contained in this endorsement shall operate to provide any coverage with respect to:

(1) Any loss, cost or expense arising out of any request, demand or order, including demands, directives, complaints, suits, orders, or requests brought by any governmental entity or any person, entity or group of persons or entities, that any **insured** or any person or entity for whom any **insured** may be legally responsible, to test for, assess, monitor, clean up, remove, contain, treat, or detoxify, neutralize or any way respond to or assess the effects of any pollutants resulting from:

    (i) Waste or disposal sites which were, or currently are, owned, operated, or used by any **insured**, or were or currently are utilized by others acting for any **insured** and/or on any **Insured's** behalf. This exclusion (i) shall not apply with regard to saltwater disposal operations;

    (ii) Disposal or dumping at any such waste or disposal site(s) of any seeping and/or polluting and/or contaminating substances or materials or waste substance(s) or waste material(s) of whatsoever nature. This exclusion (ii) shall not apply with regard to saltwater disposal operations;

    (iii) Conveyancing, carriage or transportation to or from such waste or disposal site(s) of any seeping and/or polluting and/or contaminating substances or materials or waste substance(s) or waste material(s) of whatsoever nature. This exclusion (iii) shall not apply with regard to saltwater disposal operations; and,

    For purposes of this endorsement, mud pits are not considered a waste or disposal site.

(2) Fines, or penalties which result directly from any willful violation or non-compliance with any current rule, regulation or law applicable at the time of loss.

(3) Removal of, loss of, or damage to subsurface oil, gas or any other substance or material(s).

(4) Any voluntary or mandated loss, costs, or expense arising from past or present operations performed at sites appearing on the "National Priorities List of Superfund Sites."

For purposes of this Endorsement the following definitions apply:

"Pollutants" means any solid, liquid, gaseous or thermal irritant, contaminant or waste, including but not limited to saline, saltwater, smoke, vapors, soot, dust, fumes, acids, alkalis and chemicals. Waste includes any materials which are intended to be recycled, reconditioned or reclaimed, regardless of whether the waste has the effect of making something impure or hazardous.

"Well" means a borehole sunk into the earth for the purpose of obtaining hydrocarbons and/or steam and/or sulphur and shall also include boreholes used for disposal of salt water or for injection of water or gas; including structural components and integral equipment therein from the bottom of the borehole through the casinghead or wellhead assembly.

"Well out of control" means an unintended and unexpected flow or expulsion from the "well(s)" of drilling fluid, oil, gas and/or water, above or below the surface of the ground (or waterbottom in case of a well located in water) or when the "well(s)" is declared to be out of control by the appropriate U.S. or Canadian regulatory authority which has jurisdiction over such "well(s)".

Northfield 000042

NOTICE OF REMOVAL EXHIBIT 2

All other terms and conditions remain unchanged.

BY:_____



**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE        January 31, 1999        \*and is part of Policy Number:   NN100227

\*issued to: Wagner Oil Company

\*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## EXCLUSION - ENGINEERS, ARCHITECTS OR
## SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of
the rendering or failure to render any professional services any **insured** performs for others and does not apply to others
for the rendering or failure to render any professional services for any **insured**, including:

1.  The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders
    designs or specifications; and

2.  Supervisory, inspection or engineering services.

However, this exclusion shall not apply to liability arising out of any **insured's** obligation as an operator or owner of
financial interests in oil and gas properties.

All other terms and conditions remain unchanged.

BY:_____

P585·OG (10/97)

Northfield 000425

NOTICE OF REMOVAL EXHIBIT 2

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE    January 31, 1999    *and is part of Policy Number:  NN100227

*Issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

### CHANGES TO TRANSFER OF RIGHTS OF RECOVERY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Effective at inception and in consideration of the premium charged, it is understood and agreed that the following wording is added to SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, Paragraph 8. Transfer of Rights of Recovery Against Others to **Us**:

It is agreed that in the event of any payment under the terms of this policy, **we** waive **our** rights of subrogation as respects the **insured's** right of recovery against parties requiring such waiver under a contract with the **insured** provided such waiver predated any claim under this insurance.

All other terms and conditions remain unchanged.

BY:_____

P587-OG (10/97)

Northfield 000246

 **Northland**
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE        January 31, 1999         *and is part of Policy Number:   NN100227

*Issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

### ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Effective at inception and in consideration of the premium charged, it is understood and agreed that additional **insureds**
are covered under this policy as required by written contract, but only with respect to operations performed by or for the
Named **Insured**, under contracts normal to the Named **Insured's** operations.

All other terms and conditions remain unchanged.

BY:_____

P588-OG (10/97)



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE      January 31, 1999      \*and is part of Policy Number:   NN100227

\*Issued to: Wagner Oil Company

\*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## STOP-GAP ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of the premium charged, it is agreed that if, under any circumstances, it is determined that any employee of an **insured,** who is reported and declared under the Worker's Compensation Law or Laws of the State(s) of NEVADA, NORTH DAKOTA, OHIO, WASHINGTON, WEST VIRGINIA, WYOMING and any of the Provinces of Canada, is unintentionally injured in the course of his employment but is not entitled to receive (or elects not to accept) the benefits provided by the aforementioned law, then this policy shall cover the legal liability of the **insured** for such bodily injury, disease or death.

**Our** liability under this endorsement on account of "bodily injury," disease, or death of one person, including damages for care and loss, as the result of one occurrence, is limited to the sum of U.S. $1,000,000 (AND SUBJECT TO THE SAME LIMIT FOR EACH PERSON), **our** total limit of liability for "bodily injury," disease or death as a result of one "occurrence" is limited to the sum of U.S. $1,000,000.

The insurance granted by this endorsement will not apply to:

All other terms and conditions remain unchanged.

A.   Any premium assessment, penalty, fine, or other obligation imposed by any Worker's Compensation Law;

B.   "Bodily injury," disease or death suffered or caused by any person knowingly employed by the **insured** in violation of any law **as** to age, or under the age of 14 years regardless of any such law;

C.   "Bodily injury," disease or death suffered or caused by any employee whose remuneration has not been included in the total remuneration upon which the premium for this endorsement is based;

D.   Aircraft operation or the performance of any duty in connection with aircraft while in flight.

E.   Any "claim" for "bodily injury," disease or death with respect to which the **insured** is deprived of any defense or defenses or is otherwise subject to penalty because of default in premium payment under, or any other failure to comply with the provisions of the Worker's Compensation Law or Laws of the State(s) named above.

BY:_____

P592-OG (10/97)

Northfield 000458


# Northland
## Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE        January 31, 1999        *and is part of Policy Number:    NN100227

*issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## OTHER INSURANCE

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The other insurance clause contained herein or in any other applicable insurance policy notwithstanding, it is agreed that
effective at inception:  If any **insured** is added as an **insured** on any other insurance policy, and valid insurance is
available to any **insured** as a result of being so named, then the coverage provided under this policy shall not apply until
such other insurance is exhausted.  In the event any other provider of insurance who has included any **insured** hereunder
as an insured under their policy of insurance, fails to make its insurance available to such **insured** under this policy; **we**
agree to apply the terms and conditions of this policy as though there were no other insurance in force, provided such
application does not result in any duplication of recovery by such **insured** here under.  In return for this agreement **you**
and / or any **insured** hereunder transfer all of **your** rights of recovery from such other insurance to **us** and **you** agree to
assist **us** in any reasonable manner in obtaining such recovery.

It is further agreed in the event another party which is identified as a non-operator in the applicable operating agreement is
included under this policy as an **insured**, **we** will not consider such other party's insurance to be "other insurance" as dealt
with in Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS paragraph 4. Other insurance, of this policy,
provided such treatment does not result in any duplication of recovery to such other party.  If such treatment would result in
duplication of recovery to such other party then this paragraph shall not apply.

All other terms and conditions remain unchanged.

BY:_____

P598-OG (10/97)

Northfield 000249



**Northland**
**Insurance Companies**

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE          January 31, 1999          *and is part of Policy Number:   NN100227

*Issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## CHANGES - DEFINITION COVERAGE TERRITORY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Effective at inception and in consideration of the premium charged, it is understood and agreed SECTION V. – DEFINITIONS paragraph 4. Sub-paragraph c. is eliminated in its entirety and replaced by the following:

c.    Anywhere in the world with respect to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the activities of any **insured**, provided the original "suit" for damages because of any such injury or damage is brought within the United States of America, its territories or possessions or Canada.

Such insurance as is afforded by paragraph c. above shall not apply:

a.    to "bodily injury" or "property damage" included within the "products-completed operations hazard."

All other terms and conditions remain unchanged.

BY:_____

P599-OG (10/97)

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE        January 31, 1999        *and is part of Policy Number:   NN100227

*issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## "TEMPORARY WORKER" EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Paragraph 2. Exclusions, subparagraph (e) Employer's Liability is deleted and replaced with the following:

(e) **Employer's Liability**

"Bodily injury" to:

(1) An "employee" or "temporary worker" of the **insured** arising out of and in the course of:

  (a) Employment by the **insured**; or

  (b) Performing duties related to the conduct of the **insured's** business; or

(2) The spouse, child, parent, brother or sister of that "employee" or "temporary worker" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the **insured** may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the **insured** under an "insured contract."

All other terms and conditions remain unchanged.

BY:_____

P602-OG (10/97)

Northfield 000050

NOTICE OF REMOVAL EXHIBIT 2

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE　　　January 31, 1999　　　\*and is part of Policy Number:　NN100227

\*issued to: Wagner Oil Company

\*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

### NON-SUBSCRIBER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Effective from inception and in consideration of the premium charged, it is understood and agreed that this policy does not apply to any actual or alleged liability for Employers Liability where the claim is made or the injury took place in any state(s) where **you** are a non-participant or non-subscriber to regular programs established by the State's Workers' Compensation or Disability law statutes or regulations: provided, however, that this exclusion does not apply to liability of others assumed by **you** under an "insured contract."

All other terms and conditions remain unchanged.

BY:_____

P603-OG (10/97)

**Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE     January 31, 1999     \*and is part of Policy Number:   NN100227

\*issued to: Wagner Oil Company

\*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

### DUTIES IN THE EVENT OF LOSS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section IV COMMERCIAL GENERAL LIABILITY CONDITIONS, paragraph 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit, is amended as follows:

Sub-paragraph a. is deleted in its entirety and replaced with the following:

a.   **You** must see to it that **we** are notified as soon as practicable of any "occurrence" or offense which may result in a claim under this policy.  To the extent possible, notice should include:

   (1)   How, when and where the "occurrence" or offense took place;

   (2)   The names and addresses of any injured persons and witnesses; and

   (3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

The following paragraph e. is added:

e.   Notice of an "occurrence" or offense as required above, should be given to us as shown below:

Northfield Insurance Company
c/o Burke Daniels Co., Inc.
Claims Department
9301 Southwest Freeway, Suite 500
Houston, Texas  77074

All other terms and conditions remain unchanged.

BY:_____

P605-OG (10/97)


**Northland**
**Insurance Companies**

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE        January 31, 1999        *and is part of Policy Number:   NN100227

*Issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## FELLOW EMPLOYEE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Effective at inception and in consideration of the premium charged, it is understood and agreed SECTION II. - WHO IS AN
INSURED paragraph 2. Sub-paragraph a. (1) is eliminated in its entirety and replaced by the following:

2.   Each of the following is also an **insured:**

   a.   **Your** "employees," other than **your** "executive officers," but only for acts within the scope of their employment
        by **you** or while performing duties related to the conduct of **your** business.  However, no "employee" is an
        **insured** for:

   (1)   "Bodily injury" or "personal injury":

        (a)   To **you,** to **your** partners or members (if **you** are a partnership or joint venture), or to a co-
              "employee" while in the course of his or her employment or while performing duties related to the
              conduct of **your** business;

        (b)   To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph
              (1)(a) above;

        (c)   For which there is any obligation to share damages with or repay someone else who must pay
              damages because of the injury described in paragraphs (1)(a) or (b) above; or

        (d)   Arising out of his or her providing or failing to provide professional health care services;

        except that (1) (a), (b) and (c) above do not apply to your "employees" who are managers and/or supervisors
        but only as respects their duties as managers and/or supervisors.

All other terms and conditions remain unchanged.

BY:_____

Northfield 000573

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE       January 31, 1999       \*and is part of Policy Number:   NN100227

\*issued to: Wagner Oil Company

\*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## EXCLUSION - ASBESTOS, SILICA DUST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," "personal injury," advertising injury," or medical expense arising out of the following diseases:

a.   Asbestosis
b.   Silicosis
c.   Mesothelioma
d.   Emphysema
e.   Pneumoconiosis
f.   Pulmonary Fibrosis
g.   Pleuritis
h.   Endothelioma

or any lung disease or any ailment caused by, or aggravated by, asbestos in any form or silica dust.

This insurance does not apply to any:

a.   Damages arising out of the existence of asbestos in any form or silica dust, including the costs of remedial investigations or feasibility studies, or to the costs of testing, monitoring, abatement, mitigation, cleaning, removal, or disposal of any property or substance;

b.   Damages arising out of any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; or

c.   Obligation to share damages with or repay someone else who must pay damages in connection with any of the above.

All other terms and conditions remain unchanged.

BY:_____

P613-OG (10/97)

 **Northland**
**Insurance Companies**

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE        January 31, 1999        *and is part of Policy Number:    NN100227

*issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

### ACTIONS IN REM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of the premium charged, it is understood and agreed that such coverage as is afforded by this policy shall
not be denied solely on the basis that the claim or "suit" against the **insured** is based upon an "In Rem" proceeding.

All other terms and conditions remain unchanged.

BY:_____

P595-OG (10/97)

Northfield 000576

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE     January 31, 1999     *and is part of Policy Number:   NN100227

*Issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## ADDITIONAL INSURED OIL OR GAS OPERATIONS
## NON-OPERATING WORKING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SECTION II - WHO IS AN INSURED is amended to include as an **Insured:**

1.  **You** with respect to any non-operating working interest in any oil or gas lease with any co-owners, joint venture, or mining partners, but only with respect to liability arising out of such interest;

2.  At the option of the first Named **Insured** shown in the Declarations when any Named **Insured** is designated as an operator in the applicable operating agreement, any of **your** co-owners, joint venture, or mining partners having a non-operating working interest with **you** in any oil or gas lease, but only with respect to their liability arising out of such interest;

3.  **You** and, at the option of the first Named **Insured** shown in the Declarations, any owners or co-owners of oil or gas leases, but only with respect to **your** or their liability for operations **you** conduct as operating agent under written contract with the owner or co-owner.

4.  **You** and, at the option of the first Named **Insured** shown in the Declarations when any Named **Insured** is designated as an operator in the applicable operating agreement, any of **your** co-owners, joint venture or partners having a non-operating working and/or financial interest with **you** in investment ventures normal to the **Insured's** operations, but only with respect to liabilities arising out of such interests.

To the extent insurance would be afforded under this endorsement, the limitation under SECTION II - WHO IS AN INSURED with respect to any partnership or joint venture not shown as a Named **Insured** in the Declarations does not apply.

All other terms and conditions remain unchanged.

BY:_____

P589-OG (10/97)

Northfield 000568

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE          January 31, 1999          *and is part of Policy Number:   NN100227

*issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

### AMEND NAMED INSURED WORDING TO INCLUDE SUBSIDIARIES (OPERATORS/NON-OPERATORS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Effective at inception and in consideration of the premium charged, it is understood and agreed that:

SECTION II - WHO IS AN INSURED is amended to eliminate the following wording:

No person or organization is an **insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named **insured** in the Declarations.

It is further agreed that a new paragraph 5 is added to SECTION II - WHO IS AN INSURED as follows:

5.    With respect to operators and non-operators, any owned or controlled company or subsidiary of the Named **Insured**, or at the option of the First Named **Insured** shown in the Declarations, joint ventures or partnerships of the Named **Insured** is an **Insured**, but only with respect to their liability arising out of such interest.

All other terms and conditions remain unchanged.

BY:_____

P590-OG (10/97)

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE     January 31, 1999     *and is part of Policy Number:   NN100227

*issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## WHO IS AN INSURED (LLC)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Commercial General Liability Coverage Form P650-OG Paragraph 1 of SECTION II – WHO IS AN INSURED:

    d.    A limited liability company, **you** are an insured. **Your** members are also insureds, but only with respect to the conduct of **your** business. **Your** managers are insureds, but only with respect to their duties as **your** managers.

All other terms and conditions remain unchanged.

BY:_____

P618-OG (10/97)

NOTICE OF REMOVAL EXHIBIT 2

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE    January 31, 1999      *and is part of Policy Number:  NN100227

*Issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## ADJUSTABLE RATE ENDORSEMENT (OPERATORS/NON-OPERATORS)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is understood and agreed that the premium paid for this policy is only provisional and is subject to annual adjustment at the rates set forth below. **You** agree to report to **us** at the expiration of this policy the exact number of **your** wells during the policy period and pay premium thereon at rates shown.

The deposit premium shall be applied against the premium for the final adjustment period. However, we will receive a minimum premium of $(See Declarations) for this insurance.

### ADJUSTMENT RATES

| | Working Interest | | Number of Wells | | Rate | | Premium | |
|---|---|---|---|---|---|---|---|---|
| | | | Land | Wet | Land | Wet | Land | Wet |
| **DRILLING:** | | | | | | | | |
| Operator 98150 | | | 3 | | $ 383 | $ 765 | $ 1,149 | $ |
| Non-Opr. 46510 | 0% - 5% | | | | $ 19 | $ 38 | $ | $ |
| | 6% - 10% | | | | $ 38 | $ 77 | $ | $ |
| | 11% - 25% | | | | $ 77 | $ 153 | $ | $ |
| | 26% - 50% | | 3 | | $ 191 | $ 383 | $ 573 | $ |
| | Over 50% | | | | $ 287 | $ 574 | $ | $ |
| **PRODUCING:** | | | | | | | | |
| Operator 98150 | | | 137 | 23 | $ 64 | $ 128 | $ 8,768 | $ 2,944 |
| Non-Opr. 46510 | 0% - 5% | | 45 | | $ 3 | $ 6 | $ 135 | $ |
| | 6% - 10% | | 23 | | $ 6 | $ 13 | $ 138 | $ |
| | 11% - 25% | | 34 | | $ 13 | $ 26 | $ 442 | $ |
| | 26% - 50% | | 21 | | $ 32 | $ 64 | $ 672 | $ |
| | Over 50% | | 4 | | $ 48 | $ 96 | $ 192 | $ |
| Pipeline - 98150 | | | 31 | miles | $ 85 | | | $ 2,635 |

All other terms and conditions remain unchanged.

BY:_____

P596-OG (10/97)

NOTICE OF REMOVAL EXHIBIT 2

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE        January 31, 1999        *and is part of Policy Number:   NN100227

*issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## WATERCRAFT ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding anything contained herein to the contrary, it is understood and agreed that:

SECTION I - COVERAGES, paragraph 2., EXCLUSIONS, subparagraph g.(2) is amended to read as follows:

(2)   A watercraft that is less than 50 feet long provided such watercraft is not being used to carry persons or property for a charge.

All other terms and conditions remain unchanged.

BY:_____

P593-OG (10/97)

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE     January 31, 1999       *and is part of Policy Number:   NN100227

*Issued to: Wagner Oil Company

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsemen is the same as the effective date of the policy.

## SERVICE OF SUIT

It is agreed that in the event of our failure to pay any amount claimed to be due hereunder, we, at your request will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practices of such court.

It is further agreed that service of process in such suit may be made upon our President or his nominee, at 1295 Northland Drive, Mendota Heights, Minnesota 55120 and that in any suit instituted against any one of them upon this policy we will abide by the final decision of such court or of any appellate court in the event of an appeal.

The above-named is authorized and directed to accept service of process on our behalf in any suit.

All other terms and conditions remain unchanged.

BY:_____

S1030-IL (6/94)

IL 02 75 06 95

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT
                             COVERAGE FORM
GLASS COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **CANCELLATION** Common Policy Condition is replaced by the following:

    **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

    However if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

The permissible reasons for cancellation are as follows:

    **a.** If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

    **b.** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

        **(1)** Fraud in obtaining coverage;

        **(2)** Failure to pay premiums when due;

        **(3)** An increase in hazard within the control of the insured which would produce an increase in rate;

IL 02 75 06 95

Copyright, Insurance Services Office, Inc., 1995
Copyright, ISO Commercial Risk Services, Inc., 1995

Page 1 of 2   □

Northfield 000352

(4) Loss of our reinsurance covering all or part of the risk covered by the policy; or

(5) If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**B.** The following condition is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. This Paragraph, 2., applies unless the policy qualifies under Paragraph 3. below.

   If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

3. If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

   a. The first Named Insured; and

   b. Each unit-owner to whom we issued a certificate or memorandum of insurance.

   We will mail or deliver such notice to each last mailing address known to us.

4. If notice is mailed, proof of mailing will be sufficient proof of notice.

5. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

Copyright, Insurance Services Office, Inc., 1995
Copyright, ISO Commercial Risk Services, Inc., 1995

IL 02 75 06 95   ☐

Northfield 000383

NOTICE OF REMOVAL EXHIBIT 2

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

ENDORSEMENT NO.   1

| POLICY NO.<br>NN100227 | POLICY CHANGES<br>EFFECTIVE<br>January 31, 1999 | COMPANY<br>Northfield Insurance Company |
|---|---|---|
| NAMED INSURED<br>Wagner Oil Company | | AUTHORIZED REPRESENTATIVE<br>Burke-Daniels Co., Inc. |

**COVERAGE PARTS AFFECTED**

P650-OG (10/97) and All Policy Attachments/Forms

**CHANGES**

The Named Insured is completed to read as follows:

    Wagner Oil Company
    Aptian Energy Services, Ltd.
    Aptian Gas Corporation
    Bartonian Partners
    Bryan C. Wagner
    Carancahua L.P.
    Claiborne, L. P.
    Discorbis Pipeline
    Goldenrod Transmission Company
    Norias, L.P.
    Turonian Corp.

All Other Terms and Conditions Remain Unchanged.

_____
Authorized Representative Signature

P662-OG (10/97)

NOTICE OF REMOVAL/EXHIBIT 2


**Northland**
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

ENDORSEMENT NO.   2

| POLICY NO.<br>NN100227 | POLICY CHANGES<br>EFFECTIVE<br>January 31, 1999 | COMPANY<br>Northfield Insurance Company |
|---|---|---|
| NAMED INSURED<br><br>Wagner Oil Company | | AUTHORIZED REPRESENTATIVE<br><br>Burke-Daniels Co., Inc. |

**COVERAGE PARTS AFFECTED**

   P650-OG (10/97) and All Policy Attachments/Forms

**CHANGES**

It is understood and agreed that the Named Insured is amended to include:

   H. Ed Patterson
   Brent D. Talbot
   Stephen M. Clark
   Ernie Grodi
   Dennis A. Taylor
   Mark W. Belcher

All Other Terms and Conditions Remain Unchanged.

_____
Authorized Representative Signature

Northfield 000035

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

ENDORSEMENT NO.  3

| POLICY NO.<br>NN100227 | POLICY CHANGES<br>EFFECTIVE<br>January 31, 2000 | COMPANY<br>Northfield Insurance Company |
|---|---|---|
| NAMED INSURED<br>Wagner Oil Company | | AUTHORIZED REPRESENTATIVE<br>Burke-Daniels Co., Inc. |

**COVERAGE PARTS AFFECTED**

P650-OG (10/97) and All Policy Attachments/Forms

**CHANGES**

<u>Final Audit</u>

It is understood and agreed that the final audit is calculated as follows, see attached.

All Other Terms and Conditions Remain Unchanged.

_____
Authorized Representative Signature

P662-OG (10/97)

NOTICE OF REMOVAL/EXHIBIT 2

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE    January 31, 2000    \*and is part of Policy Number:    NN100227

\*Issued to: Wagner Oil Company

\*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## FINAL AUDIT ENDORSEMENT (OPERATORS/NON-OPERATORS)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is understood and agreed that the premium paid for this policy is only provisional and is subject to annual adjustment at the rates set forth below. **You** agree to report to **us** at the expiration of this policy the exact number of **your** wells during the policy period and pay premium thereon at rates shown.

The deposit premium shall be applied against the premium for the final adjustment period. However, **we** will receive a minimum premium of $(See Declarations) for this insurance.

### ADJUSTMENT RATES

| DRILLING: | Working Interest | | Number of Wells Land | Wet | Rate Land | Wet | Premium Land | Wet |
|---|---|---|---|---|---|---|---|---|
| Operator 98150 | | | 1 | | $ 383 | $ 765 | $ 383 | $ |
| Non-Opr. 46510 | 0% | - 5% | | | $ 19 | $ 38 | $ | $ |
| | 6% | - 10% | 3 | | $ 38 | $ 77 | $ 114 | $ |
| | 11% | - 25% | 2 | | $ 77 | $ 153 | $ 154 | $ |
| | 26% | - 50% | 3 | | $ 191 | $ 383 | $ 573 | $ |
| | Over | 50% | | | $ 287 | $ 574 | $ | $ |

| PRODUCING: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Operator - Wet | | | | 22 | | $ 128 | | $ 2,816 |
| | | | Inception 137 | Acquired 07-01-99 36 | (.586) $ 64 | P/R $ 38 | Annl. $ 8,768 | P/R $ 1,368 |
| Operator 98150 | | | | | | | | |
| Non-Opr. 46510 | 0% | - 5% | Inception 40 | Acquired 07-01-99 | (.586) $ 3 | P/R $ 3 | Annl. $ 120 | P/R $ |
| | 6% | - 10% | 15 | 3 | $ 6 | $ 4 | $ 90 | $ 12 |
| | 11% | - 25% | 34 | 15 | $ 13 | $ 8 | $ 442 | $ 120 |
| | 26% | - 50% | 16 | 2 | $ 32 | $ 19 | $ 512 | $ 38 |
| | Over | 50% | 4 | 5 | $ 48 | $ 28 | $ 192 | $ 140 |
| Pipeline - 98150 | | | 31 | miles | $ 85 | | $ 2,635 | |

TOTAL: $ 18,477
PAID PREMIUM: $ 17,648
ADDITIONAL PREMIUM DUE: $ 829

All other terms and conditions remain unchanged.

BY:_____

P596-OG (10/97)

## IMPORTANT NOTICE

To obtain or make a complaint:

You may call Northland Insurance Companies' toll-free telephone number for information or to make a complaint at:

### 1-800-237-9334

You may also write to Northland Insurance Companies at:

P. O. Box 64816
St. Paul, Minnesota 55164-0816

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance, P.O. Box 149104, Austin, Texas 78714-9104. Fax #(512) 475-1771.

PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim, you should contact Northland Insurance Companies first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de Northland Insurance Companies para informacion o para someter una queja al:

### 1-800-237-9334

Usted tambien puede escribir a Northland Insurance Companies:

P. O. Box 64816
St. Paul, Minnesota 55164-0816

Puede comunicarse con el Departmento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir a Departamento de Seguros de Texas, P. O. Box 149104, Austin, Texas 78714-9104. Fax # (512) 475-1771.

DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con Northland Insurance Companies primero. Si no se resuelve la disputa, puede entonces comunicarse con el Departamento de Seguros de Texas.

UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte a condicion del documento adjunto.

N-1817 (R 4/93)

Northfield 000658

 **Northland** Insurance Companies

 **UMBRELLA LIABILITY POLICY DECLARATIONS**

COVERAGE IS PROVIDED BY:
NORTHFIELD INSURANCE COMPANY

Policy No. **NU101368**

**Policy Period: From** January 31, 1999 **to** January 31, 2000   Renewal of No. **NEW**
at 12:01 A.M. Standard Time at your mailing address shown below.

**Named Insured and Mailing Address:**   Wagner Oil Company
3400 City Center Tower II
Ft. Worth, Texas 76102

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**LIMITS OF INSURANCE:**

| | |
|---|---|
| Each Occurrence Limit | $10,000,000 |
| General Aggregate Limit/Other than Products/Completed Operations and Auto | $10,000,000 |
| Products-Completed Operations Aggregate Limit | $10,000,000 |
| Self-Insured Retention - Coverage B: | $    10,000 |

**ADVANCE PREMIUM:  (Adjustable per Section IV, 4[b])**

| | |
|---|---|
| $  13,375.00 | Minimum Premium (per annum) |
| $  13,375.00 | Premium Payable at Inception (see Minimum Earned Premium Endorsement) |
| $       500.00 | Policy Fee |
| $       672.94 | Texas State Tax |
| $         20.81 | Texas Stamping Fee |
| $  14,568.75 | Total Payable at Inception |

*processed 3/4*

**FORM OF BUSINESS**

Form of Business:
[  ] Individual   [  ] Joint Venture   [  ] Partnership   [  ] LLC   [x] Organization (Other than Partnership or Joint Venture)

**BUSINESS DESCRIPTION:** Lease Operator/Non-Operator

**FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION:**

| | | |
|---|---|---|
| P651-OG (10-97) | P621-OG (10-97) | P652-OG (2-98) |
| P665-OG (10-97) | P622-OG (10-97) | P702-OG (2-98) |
| P657-OG (10-97) | P629-OG (10-97) | S1030-IL (6/94) |
| P661-OG (10-97) | P624-OG (10-97) | IL 02 75 (06/95) |
| P663-OG (10-97) | P625-OG (10-97) | Endorsement No. 1 |
| P619-OG (10-97) | P628-OG (10-97) | |
| P620-OG (10-97) | P623-OG (10-97) | |

UNDERLYING INSURANCE IS LISTED IN THE SCHEDULE OF UNDERLYING INSURANCE.

Counter-signed:   AGENCY #049000
Burke-Daniels Co., Inc.
P. O. Box 36069
Houston, Texas 77236

By:_____
Authorized Representative

P665-OG (10/97)

**EXHIBIT B**

NOTICE OF REMOVAL EXHIBIT 2

**CERTIFIED POLICY**

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

No additional insurance is afforded by this copy.

Northfield Insur.

Name of Insuring Company

NU101368          3-6-14

Policy Number                    Date

Ken Kupec

Kenneth Kupec, Second Vice President
BI Document Management

Northfield 000070

NOTICE OF REMOVAL / EXHIBIT 2

**Northland Insurance**
A Travelers Company

# COMMERCIAL INSURANCE
# POLICY FOR
# OIL AND GAS OPERATIONS

Administered by:   **Burke-Daniels Co., Inc.**
9301 Southwest Freeway, Suite 500
Houston, TX 77074
Phone: (713) 981-3900    Fax: (713) 981-3999

**Northfield Insurance Company**
1295 Northland Drive
Mendota Heights, Minnesota 55120
1-800-237-9334

Stock Company

P651-OG (10/97)

Northfield 000700

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (Broad Form)

This endorsement modifies insurance provided under the following:

Commercial Auto/Garage Coverage Part
Commercial General Liability Coverage Part
Products/Completed Operations Liability Coverage Part

Owners and Contractors Protective Liability Coverage Part
Commercial Professional Liability Coverage Part
Businessowners Liability Coverage Form

1. This insurance does not apply:
   A. Under any Liability Coverage to "bodily injury" or "property damage";
      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.
   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:
      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;
      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or
      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties;
   "nuclear material" means "source material", "special nuclear material", or "by-product material";
   "source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;
   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";
   "waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."
   "nuclear facility" means:
      (a) Any "nuclear reactor";
      (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";
      (c) Any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
      (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
   "property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1985

P651-OG (10/97)

---

COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A. CANCELLATION
   1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
   2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
      a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
      b. 30 days before the effective date of cancellation if we cancel for any other reason.
   3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
   4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
   5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
   6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. CHANGES
   This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. EXAMINATION OF YOUR BOOKS AND RECORDS
   We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. INSPECTIONS AND SURVEYS
   We have the right and are not obligated to:
   1. Make inspections and surveys at any time;
   2. Give you reports on the conditions we find; and
   3. Recommend changes.
   Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   1. Are safe or healthful; or
   2. Comply with laws, regulations, codes or standards.
   This condition applies not only to us, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports or recommendations.

E. PREMIUMS
   The first Named Insured shown in the Declarations:
   1. Is responsible for the payment of all premiums; and
   2. Will be the payee for any return premiums we pay.

F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY
   Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.
   If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative for us.

Secretary                          President

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1985

P651-OG (10/97)

Northfield 000092



**Northland**
Insurance Companies

## COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

Various provisions of this policy restrict coverage. Read the entire policy and any "underlying insurance" carefully to determine rights, duties and what is covered and not covered.

Throughout this policy the words "you," "your" and "yours" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

With respect to Coverage A, the words "this insurance" mean the excess liability insurance provided under this policy.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED** for Coverage B, and any person qualifying as such under "underlying insurance" for Coverage A.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS** of this policy.

## SECTION I - COVERAGES
## COVERAGE A - EXCESS LIABILITY COVERAGE

1. **INSURING AGREEMENT**

   (a) We will pay those sums, in excess of the amount payable under the terms of any "underlying insurance," that the insured becomes legally obligated to pay as damages because of injury or damage to which this insurance applies, provided that the "underlying insurance" also applies, or would apply but for the exhaustion of its applicable limits of insurance.

   (b) We will have the right to participate in the defense of claims or suits against any insured seeking damages because of injury or damage to which this insurance may apply. We will have the right to defend such claims or suits when the applicable limit of insurance of the "underlying insurance" has been used up by payment of judgments, settlements and any cost or expense subject to such limit.

   This right to defend is limited as set forth in Paragraph 3. below.

   (c) The amount we will pay for damages is limited as described in **SECTION III - LIMIT OF INSURANCE.**

   (d) This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance," except:

   (1) We will have no obligation under this insurance with respect to any claim or suit that is settled without our consent; and

   (2) With respect to any provisions to the contrary contained in this insurance.

2. **EXCLUSIONS**

   The exclusions applicable to the "underlying insurance" also apply to this insurance. Additionally, this insurance does not apply to:

   (a) Damage by fire to premises rented to you.

Northfield 000063

NOTICE OF REMOVAL EXHIBIT 2

(b)   Any obligation to pay expenses under any medical payments coverage.

(c)   Any obligation to reimburse an insurer as provided by the terms of the **Endorsement For Motor Carrier Policies of Insurance For Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980** or under the terms of any similar endorsement required by Federal or state statute.

(d)   Any obligation imposed by law under any automobile no-fault, uninsured motorist, underinsured motorist, workers compensation, disability benefits or unemployment compensation law or any similar law.

(e)   Injury excluded by the Nuclear Energy Liability Exclusion Endorsement attached to this policy.

(f)   Injury arising out of the rendering of or failure to render any professional services.

3.   **DEFENSE OF CLAIMS OR SUITS**

(a)   When we have and exercise the right to defend, we will pay for all "defense expense" once our right to defend begins. We may make investigation of any claim or suit as we think appropriate. We may settle such claim or suit within the Amount of Insurance available at the time of the settlement.

(b)   At our option, our right to defend ends when we have used up the Amount of Insurance available in the payment of any combination of judgments, settlements or awards, as provided under SECTION III – LIMITS OF INSURANCE. This applies both to claims and suits pending at the time and those filed thereafter.

(c)   When we control the defense of a claim or suit, we will pay for the "defense expense." If by mutual agreement or court order the insured assumes control before the applicable Amount of Insurance available is used up, we will reimburse the insured for reasonable "defense expense."

(d)   As soon as practicable after we become aware that an Amount of Insurance available is used up:

(1)   We will notify you of any outstanding claims or suits subject to that Amount; and

(2)   You will then arrange to assume control of the defense of all such claims and suits against you or any other insured when our right to defend them ends.

(e)   We will assist the insured in the transfer of control of the defense of claims and suits under (c) or (d) above. Until such arrangements are completed, we will take on behalf of any insured those steps that we think appropriate:

(1)   To avoid a default in any claim or suit; or

(2)   To the continued defense of a claim or suit.

You agree that if we take such steps:

(1)   We do not waive or give up any of our rights under this insurance; and

(2)   You will reimburse us for any "defense expense" that arises out of such steps if the applicable Amount of Insurance available has been used up.

## COVERAGE B - EXTENDED LIABILITY COVERAGE

1.   **INSURING AGREEMENT**

(a)   We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies. This insurance applies to "injury" which occurs during the

Northfield 000764

policy period shown in the Declarations. This insurance applies only to "Injury" which occurs in the "coverage territory."

(b) We have the right to defend claims or **"suits"** against the insured seeking such damages and to pay for the **"defense expense."** This right is limited as described in paragraph 3., under Defense of Claims or Suits.

(c) Each payment we make for damages reduces the Amount of Insurance available, as provided under SECTION III - LIMITS OF INSURANCE.

(d) We have no obligation under this insurance to make payments or to perform acts or services except as provided for under (a) and (b) above.

2. **EXCLUSIONS**

This insurance does not apply to:

(a) "Injury" that is the subject of the insurance policies shown in the Schedule of Underlying Insurance in the Declarations.

(b) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

(c) "Injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

(d) Any obligation imposed by law under any automobile no-fault, uninsured motorist, underinsured motorist, workers compensation, disability benefits or unemployment compensation law or any similar law.

(e) (1) "Injury" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    (a) At or from premises any insured owns, rents or occupies;

    (b) At or from any site or location used by or for **you** or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom any insured may be legally responsible; or

    (d) At or from any site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        (i) if the pollutants are brought on or to the site or location in connection with such operations; or

        (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) Any loss, cost, or expense arising out of any governmental direction or request that any insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Northfield 000075

Subparagraphs (a) and (d)(i) of paragraph (1) of this exclusion do not apply to "*bodily injury*" or "*property damage*" caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a *hostile fire means* one which becomes uncontrollable or breaks out from where it was intended to be.

(f)   "**Injury**" for which any insured may be held liable by reason of:

    (1)   Causing or contributing to the intoxication of any person;

    (2)   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    (3)   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

(g)   "**Property damage**" to:

    (1)   Property any insured owns, rents, or occupies.

    (2)   Premises any insured sells, gives away or abandons; if the "property damage" arises out of any part of those premises.

    (3)   Property loaned to any insured.

(h)   "**Property damage**" to "**your product**" arising out of it or any part of it.

(i)   "**Property damage**" to "**your work**" arising out of it or any part of it and included in the "**products-completed operations hazard**".

(j)   "**Property damage**" to "**impaired property**" or property that has not been physically injured, arising out of:

    (1)   A defect, deficiency, inadequacy or dangerous condition in "**your product**" or "**your work**"; or

    (2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

(k)   Damages claimed for any loss, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (1)   "**Your product**";

    (2)   "**Your work**"; or

    (3)   "**Impaired property**";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(l)   Any obligation imposed under any of the following laws:

    (1)   Employee's Retirement Income Security Act (ERISA) of 1974 as now or hereafter amended, or

    (2)   any first party personal injury, automobile no-fault, uninsured motorists, underinsured motorists law or any similar law.

(m)   "**Injury**" excluded by the Nuclear Energy Liability Exclusion Endorsement attached to this policy.

(n)   "**Injury**" arising out of the rendering of or failure to render any professional services.

Northfield 000076

(o) "Injury" due to war, whether or not declared, or any act or condition incidental to war. War includes civil war, insurrection, rebellion or revolution.

(p) Any obligation to reimburse an insurer as provided by the Terms of the Endorsement for Motor Carrier Policies of Insurance For Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980 or under the Terms of any similar endorsement required by Federal or state statute.

## 3. DEFENSE OF CLAIMS OR SUITS

(a) We have the right to defend claims or "suits" against any insured seeking damages payable under this insurance. We may make:

(1) Investigation of any claim or "suit", and

(2) Settlement within the applicable Amount of Insurance available;

as we think appropriate.

(b) At our option, our right to defend such claims or "suits" ends when we have used up the Amount of Insurance available, as provided under SECTION III – LIMITS OF INSURANCE. This applies both to claims and "suits" pending at that time and those filed thereafter. you will then arrange to assume control of the defense of all such claims and "suits" against you or any other insured when our right to defend them ends.

(c) When we control the defense of a claim or "suit," we will pay for the "defense expense." If by mutual agreement or court order the insured assumes control before the applicable Amount of Insurance available is used up, we will reimburse the insured for reasonable "defense expense."

(d) As soon as practicable after we become aware that the Amount of Insurance available is used up:

(1) We will notify you of any outstanding claims and "suits" subject to that Amount; and

(2) You will then arrange to assume control of the defense of all such claims and "suits" against you or any other insured when our right to defend them ends.

(e) We will assist the insured in the transfer of control of the defense of claims and "suits" under (c) or (d) above. Until such arrangements are completed, we will take on behalf of any insured those steps that we think appropriate:

(1) To avoid a default in any claim or "suit"; or

(2) To the continued defense of a claim or "suit."

You agree that if we take such steps:

(1) We do not waive or give up any of our rights under this insurance; and

(2) You will reimburse us for any "defense expense" that arises out of such steps if the Amount of Insurance available has been used up.

## 4. SELF-INSURED RETENTION - PER INCIDENT

As respects Coverage B, we will only pay for damages in excess of the self-insured retention, up to the amount of insurance available. The self-insured retention does not apply to the payment of "defense expense."

Northfield 000767

The self-insured retention is the amount stated in the Declarations, and shall apply separately to all damages because of "injury" as a result of any one "incident" regardless of the number of persons or organizations who sustain damages because of that "incident."

## SECTION II - WHO IS AN INSURED
## COVERAGE A AND B

1. If you are designated in the Declarations as:

   (a) An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   (b) A partnership or joint venture, you are an insured, your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   (c) An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   (a) Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

      However, none of these employees is an insured for "bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment.

   (b) Any person (other than your employee) or any organization while acting as your real estate manager.

   (c) Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   (d) Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured if there is no other similar insurance available to that organization. However:

   (a) Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   (b) Coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   (c) Coverage does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE
## COVERAGE A AND B

Northfield 000079

1. The Limits of Insurance shown in the Declarations and the rules below fix the most **we** will pay under the terms of this insurance regardless of the number of:

   (a)  Insureds;

   (b)  Claims made or "suits" brought;

   (c)  Persons or organizations making claims or bringing "suits."

2. The Amount of Insurance stated as the General Aggregate Limit is the most we will **pay** for the damages under Coverages A and B, other than damages because of "injury" or damage:

   (a)  included within "the products-completed operations hazard"; or

   (b)  arising out of the ownership, operation, maintenance, use, loading or unloading, or entrustment to others of an auto;

   Each payment we make for such damages reduces by the amount of the payment the General Aggregate Limit. This reduced limit will then be the Amount of Insurance available for further damages of these kinds.

3. The Amount of Insurance stated as the Products-Completed Operations Aggregate Limit is the most **we** will pay under Coverages A and B for damages because of "injury" or damage included in the "products-completed operations hazard", and

   Each payment we make for such damages reduces by the amount of the payment the Products-Completed Operations Aggregate Limit. This reduced limit will then be the Amount of Insurance available for further damages of these kinds.

4. Subject to 2. or 3. above, whichever applies, or with respect to "injury" or damage arising out of the ownership, operation, maintenance, use, loading or unloading, or entrustment to others of an auto, the Each Incident Limit is the most we will pay for the sum of damages under Coverages A and B because of all "injury" and damage arising out of any one "incident."

5. The Limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

6. Expenses incurred by or for the insured to investigate, negotiate, settle, or defend any claim or suit are payable by the company in addition to the limits of insurance.

## SECTION IV - CONDITIONS

1. **APPEALS**

   In the event the "underlying insurer" elects not to appeal a judgment in excess of the limits of the "underlying insurance," we may elect to make such appeal. If we so elect, we shall be liable, in addition to the applicable Amount of Insurance, for all "defense expenses" we incur.

2. **BANKRUPTCY OF UNDERLYING INSURER**

   In the event of bankruptcy or insolvency of any "underlying insurer," the insurance afforded by this policy shall not replace such "underlying insurance," but shall apply as if the "underlying insurance" was valid and collectible.

**3. DUTIES IN THE EVENT OF "INCIDENT," CLAIM OR "SUIT"**

(a) **You** must see to it that **we** are notified as soon as practicable of an "incident" which may result in a claim to which this insurance applies. To the extent possible notice should include:

    (1) How, when and where the "incident" took place;

    (2) The names and addresses of any injured persons and witnesses; and

    (3) The nature and location of any "injury" or damage arising out of the "incident."

Notice of an "incident" is not notice of a claim.

(b) If a claim is received by any insured **you** must:

    (1) Immediately record the specifics of the claim and the date received; and

    (2) Notify **us** as soon as practicable.

**You** must see to it that **we** receive written notice of the claim as soon as practicable.

(c) **You** and any other involved insured must:

    (1) Immediately send **us** copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit."

    (2) Authorize **us** to obtain records and other information;

    (3) Cooperate with **us** in the investigation, settlement or defense of the claim or "suit"; and

    (4) Assist **us**, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" or damage to which this insurance may also apply.

    (5) Notify **us** immediately of any judgment or settlement of any claim or suit brought against any insured.

(d) No insureds will, except at their own cost, voluntarily make payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. MAINTENANCE OF UNDERLYING INSURANCE (APPLICABLE TO COVERAGE A)**

(a) **You** agree to maintain the "underlying insurance" in full force and effect during the term of this policy, and to inform **us** within 30 days of any replacement of that "underlying insurance" by the same or another company.

(b) **You** must notify **us** immediately:

    (1) Of any changes to the "underlying insurance." **We** may adjust our premium accordingly from the effective date of the change to the "underlying insurance";

    (2) If any "underlying insurance" is cancelled or not renewed and you do not replace it, the insurance afforded by this policy shall apply as if the "underlying insurance" was valid and collectible.

(c) Reduction or exhaustion of the "aggregate limit" of any "underlying insurance" by payments for judgments, settlements or awards will not be a failure to maintain "underlying insurance" in full force and effect.

Northfield 000870

(d) No statement contained in this Condition limits our right to cancel or not renew this policy.

**5. OTHER INSURANCE**

This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance.

**6. POLICY PERIOD**

This insurance will respond to "injury" or damage that occurs, or arises from an offense committed, during the policy period of this insurance shown in the Declarations.

**7. PREMIUM AUDIT**

(a) We will compute all premiums for this policy in accordance with our rules and rates.

(b) Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured. If the policy Limit of this insurance is used up prior to the end of the policy period, the premium is fully earned.

(c) The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**8. CANCELLATION**

(a) The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

(b) We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 60 days before the effective date of cancellation if we cancel for any other reason.

(c) We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

(d) Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

(e) If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

(f) If notice is mailed, proof of mailing will be sufficient proof of notice.

**9. REPRESENTATIONS**

By accepting this policy, you agree:

(a) The statements in the Declarations are accurate and complete;

(b) Those statements are based upon representations you made to us; and

(c) We have issued this policy in reliance upon your representations.

NOTICE OF REMOVAL EXHIBIT 2

**10. SEPARATION OF INSUREDS**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

(a)   As if each Named Insured were the only Named Insured; and

(b)   Separately to each insured against whom claim is made or "suit" is brought.

**11. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## SECTION V - DEFINITIONS
## COVERAGE A

1.   "Aggregate limit" means the maximum amount stated in the policy for which the insurer will be liable, regardless of the number of covered claims.

2.   "Defense expense" means payments allocated to a specific claim or suit for its investigation, settlement, or defense, including:

   (a)   Attorney fees and all other litigation expenses.

   (b)   The cost of bonds to appeal a judgment or award in any suit we defend.

   (c)   Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Bodily Injury Liability coverage provided by underlying insurance applies.

   (d)   The cost of bonds to release attachments, but only for bond amounts within the Amount of Insurance available.

   (e)   Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earning up to $100 a day because of time off from work.

   (f)   Cost taxed against the insured in the suit.

   (g)   Interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the provisions of **SECTION III - LIMITS OF INSURANCE.**

"Defense expense" does not include:

   (a)   Salaries and expenses of our employees or the insured's employees, other than:

      (1)   That portion of our employed attorney's fees, salaries and expenses allocated to a specific claim or suit; and

      (2)   The expenses described in (e) above.

   (b)   Fees and expenses of independent adjusters we hire.

Northfield 000872

3. "Incident" means:

    (a) With respect to bodily injury to persons other than your employees and property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

    (b) With respect to bodily injury to your employees arising out of and in the course of their employment by you, the accident or disease which causes the bodily injury; and

    (c) With respect to offenses committed by the insured resulting in personal injury or advertising injury, all such injury sustained by any one person or organization.

4. "Occurrence limit" means any specific limit, other than an "aggregate limit," applicable to any "underlying insurance," regardless of whether such limit is subject to an "aggregate limit" in the "underlying policy."

5. "Underlying insurance" means the liability insurance coverage provided under policies shown in the SCHEDULE OF UNDERLYING INSURANCE, for the limits and periods indicated. It includes any policies issued to replace those policies during the term of this insurance that provide:

    (a) At least the same policy limits;

    (b) The same hazards insured against, except as modified by general program revisions or as agreed to by us in writing; and

6. "Underlying insurer" means any insurer who issues a policy of "underlying insurance."

7. "Underlying policy" means a policy providing "underlying insurance."

## COVERAGE B

1. "Advertising injury" means "injury" arising out of one or more of the following offenses:

    (a) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    (b) Oral or written publication of material that violates a person's right of privacy;

    (c) Misappropriation of advertising ideas or style of doing business; or

    (d) Infringement of copyright, title or slogan, committed in the course of advertising your goods, products or services.

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

3. "Coverage Territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a "suit" brought in the United States of America (including its territories and possessions), Puerto Rico and Canada or in a settlement we agree to.

4. "Defense expense" means payments allocated to a specific claim or "suit" for its investigation, settlement, or defense, including:

    (a) Attorney fees and all other litigation expenses.

    (b) The cost of bonds to appeal a judgment or award in any "suit" we defend.

    (c) Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Bodily Injury Liability coverage under this insurance applies.

Northfield 000673

(d)  The cost of bonds to release attachments, but only for bond amounts within the Amount of Insurance available.

(e)  Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

(f)  Cost taxed against the insured in the "suit."

(g)  Interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the provisions of **SECTION III - LIMITS OF INSURANCE**.

"Defense expense" does not include:

(a)  Salaries and expenses of our employees or the insured's employees, other than:

    (1)  That portion of our employed attorney's fees, salaries and expenses allocated to a specific claim or "suit"; and

    (2)  The expenses described in (e) above.

(b)  Fees and expenses of independent adjusters we hire.

5.  "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

(a)  It incorporates "your product" or "your work," that is known or thought to be defective, deficient, inadequate or dangerous; or

(b)  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

(a)  The repair, replacement, adjustment or removal of "your product" or "your work"; or

(b)  Your fulfilling the terms of the contract or agreement.

6.  "Incident" means:

(a)  With respect to "bodily injury" to persons other than your employees and "property damage" an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

(b)  With respect to "bodily injury" to your employees arising out of and in the course of their employment by you, the accident or disease which causes the "bodily injury"; and

(c)  With respect to offenses committed by the insured resulting in "personal injury," all such "injury" sustained by any one person or organization.

7.  "Injury" means "bodily injury," "property damage," "advertising injury" or "personal injury."

8.  "Personal injury" means "injury," other than "bodily injury," arising out of one or more of the following offenses:

(a)  False arrest, detention or imprisonment;

(b)  Malicious prosecution;

NOTICE OF REMOVAL, EXHIBIT 2

(c) Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

(d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

(e) Oral or written publication of material that violates a person's right of privacy, arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

9. (a) "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned.

(b) "Your work" will be deemed completed at the earliest of the following times:

   (1) When all of the work called for in your contract has been completed.

   (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance correction, repair or replacement, but which is otherwise complete, will be treated as completed.

(c) This hazard does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the "injury" or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

10. "Property damage" means:

   (a) Physical injury to tangible property, including all resulting loss of use of that property; or

   (b) Loss of use of tangible property that is not physically injured.

11. "Suit" means a civil proceeding in which damages to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

12. "Your product" means:

   (a) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

   (b) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in (a) and (b) above.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

13. **"Your work" means:**

   (a)   Work or operations performed by you or on your behalf; and

   (b)   Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in (a) or (b) above.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (Broad Form)

1.   The insurance does not apply:

   (a)   Under any Liability Coverage, to "bodily injury" or "property damage":

      (1)   With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2)   Resulting from the "hazardous properties" of "nuclear material" and with respect to which [a] any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or [b] the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   (b)   Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   (c)   Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

      (1)   The "nuclear material" [a] is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or [b] has been discharged or dispersed therefrom;

      (2)   The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3)   The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.   As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "special nuclear material" or "by-product material";

P657-OG (10/97)                                                                    Page 14 of 15

Northfield 000876

NOTICE OF REMOVAL EXHIBIT 2

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material [a] containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and [b] resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a)   Any "nuclear reactor";

(b)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

(c)   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Northfield 000878



**Northland**
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE January 31, 1999.      \*and is part of Policy Number NU101368

\*Issued to: Wagner Oil Company

\* Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## SCHEDULE OF UNDERLYING INSURANCE

All underlying insurance will be maintained in full effect during the currency of this policy.

| | COMPANY | POLICY TERM |
|---|---|---|
| A. | Northfield Insurance Co. | 01-31-99/00 |
| B. | American States Insurance Co. | 01-31-99/99 |
| C. | Eagle Pacific | 01-31-99/99 |
| D. | Eagle Pacific | 01-31-99/99 |
| E. | Fireman's Fund Insurance Co. | 01-31-99/99 |

| | | | | |
|---|---|---|---|---|
| A. | GENERAL LIABILITY | $ | 1,000,000 | Each Occurrence Limit (BI & PD) |
| | | $ | 2,000,000 | General Aggregate |
| | | $ | 1,000,000 | Products-Completed Operations Aggregate |
| | | $ | 1,000,000 | Underground Resources & Equipment Aggregate |
| B. | AUTO LIABILITY | $ | 1,000,000 | Each Accident Limit |
| C. | EMPLOYERS LIABILITY | $ | 1,000,000 | Each Accident Limit |
| | | $ | 1,000,000 | Bodily Injury by Disease - Policy Limit |
| | | $ | 1,000,000 | Disease - Each Employee |
| D. | MARITIME EMPLOYERS LIABILITY | $ | 1,000,000 | Each Accident Limit |
| E. | CHARTERERS LEGAL LIABILITY | $ | 1,000,000 | Each Accident Limit |

All other terms and conditions remain unchanged.

_____
Authorized Representative

P661-OG (10/97)

Northfield 0000279

NOTICE OF REMOVAL EXHIBIT 2

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE     «EFFDATE»          \*and is part of Policy Number:   «NUMBER»

\*Issued to: «ASSDNAME»

\*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS IN THIS POLICY

This policy is subject to a minimum earned premium.

If this policy is canceled at your request, you agree with us:

1.   That the minimum earned premium for this policy is the greater of $1,000 or 25% of the Total Premium;

2.   That such minimum earned premium is not subject to short rate or pro-rate adjustment; and

3.   That cancellation for non-payment of premium, after the effective date of the policy, shall be deemed a request by you for cancellation of this policy and will activate this minimum earned premium provision.

All other terms and conditions remain unchanged.

BY: _____

P663-OG (10/97)

 **Northland**
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE   «EFFDATE»          *and is part of Policy Number:   «NUMBER»

*Issued to: «ASSDNAME»

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement
.is the same as the effective date of the policy.

## EXCLUSION - ASBESTOS, SILICA DUST

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," "personal injury," advertising injury," or
medical expense arising out of the following diseases:

a.  Asbestosis
b.  Silicosis
c.  Mesothelioma
d.  Emphysema
e.  Pneumoconiosis
f.  Pulmonary Fibrosis
g.  Pleuritis
ι.  Endothelioma

or any lung disease or any ailment caused by, or aggravated by, asbestos in any form or silica dust.

This insurance does not apply to any:

a.  Damages arising out of the existence of asbestos in any form or silica dust, including the costs of remedial
    investigations or feasibility studies, or to the costs of testing, monitoring, abatement, mitigation, cleaning,
    removal, or disposal of any property or substance;

b.  Damages arising out of any supervision, instructions, recommendations, warnings or advice given or which
    should have been given in connection with the above; or

c.  Obligation to share damages with or repay someone else who must pay damages in connection with any of the
    above.

All other terms and conditions remain unchanged.

BY:_____

P619-OG (10/97)

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE     «EFFDATE»          *and is part of Policy Number:    «NUMBER»

*issued to: «ASSDNAME»

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

It is agreed that this insurance does not apply to "injury" to:

1.   A person arising out of any:

(a)   Refusal to employ that person;

(b)   Termination of that person's employment; or

(c)   Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation,
reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person;

2.   The spouse, child, parent, brother or sister of that person as a consequence of "injury" to that person at
whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed; or

3.   Any other person as a consequence of "injury" to that person at whom any of the employment-related
practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1)   Whether any insured may be liable as an employer or in any other capacity; and

(2)   To any obligation to share damages with or repay someone else who must pay damages because of the
injury.

All other terms and conditions remain unchanged.

BY: _____

P620-OG (10/97)

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE    «EFFDATE»        \*and is part of Policy Number:    «NUMBER»

\*Issued to: «ASSDNAME»

\*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## AUTOMOBILE LIABILITY LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

It is agreed that Coverage B of this insurance does not apply to any liability for "bodily injury" or "property
damage" arising out of the ownership, maintenance, operations, use, loading or unloading of any automobile.

All other terms and conditions remain unchanged.

BY:_____

P621-OG (10/97)

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE    «EFFDATE»        *and is part of Policy Number:    «NUMBER»

*Issued to: «ASSDNAME»

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## OIL INDUSTRY AMENDATORY ENDORSEMENT
### "COVERAGE A & B"

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

It is hereby understood and agreed that this policy will not apply to:

1. **LOSS OF HOLE**

   Liability for loss of or damage to any well or hole being drilled by you or on your behalf and/or any well or
   hole which is in your care, custody or control or for which you are or may be responsible, and any cost or
   expense incurred in redrilling or restoring the well or hole or any substitute well or hole.

2. **IN-HOLE EQUIPMENT**

   Liability for loss of or damage to any drilling tool, pipe, collar, casing, bit, pump, drilling or well servicing
   machinery, or any other equipment while below the surface of the earth in any well or hole being drilled by
   you or on your behalf and/or in any well or hole which is in your care, custody or control or for which you are
   or may be responsible.

3. **COST OF CONTROL**

   Liability for costs or expenses incurred in:

   a.   Controlling or bringing under control any wells or holes, or

   b.   Extinguishing fire in or from any such wells or holes, or

   c.   Drilling relief wells or holes, whether or not the relief wells or holes are successful.

   It is further understood and agreed that when any insured is an operator or a non-operator as described in the
   applicable operating agreement, this exclusion shall only apply to an "occurrence" which causes loss to any
   well(s) and/or holes in which you have a working interest.  If, however, any insured is not an operator or non-
   operator as defined in the applicable operating agreement this qualifying paragraph shall not apply.

4. **SUBSIDENCE**

   Loss of, damage to or loss of use of property directly or indirectly resulting from subsidence caused by any
   insured's subsurface operations.

P622-OG (10/97)                                                                 Page 1 of 2

Northfield 000093

**5. CO-OWNER**

This insurance does not apply to any liability damages claimed by any "co-owner of the working interest."

"Co-owner of the working interest" means any person or organization who is, with **you**, a co-owner, joint venturer or mining partner in mineral properties who:

a. Participates in the operating expense of such properties; or

b. Has the right to participate in the control, development or operation of such properties.

However, it is further understood and agreed that the preceding paragraph shall not under any circumstances be construed to exclude coverage for the liability of co-venturers, partners or co-owners for which **you** are responsible to provide insurance as respects third parties who are not insureds under this policy, as defined.

**6. EXCLUSION - LEAD**

This insurance does not apply to:

a. "Bodily Injury," "property damage," "advertising injury," "personal injury," or medical expense arising out of lead or the hazardous properties of lead.

b. Any damages for remedial investigations or feasibility studies or the costs of testing, monitoring, abatement, mitigation, cleaning, removal or disposal of lead or any item(s) containing lead.

c. Any damages arising out of any supervision, instructions, recommendations, requests, warnings, or advice given or which should have been given in connection with b. above.

d. Any obligation to share damages with or repay someone else who must pay damages in connection with a., b., or c. above.

All other terms and conditions remain unchanged.

BY:_____

P622-OG (10/97)                                                          Page 2 of 2

Northfield 000024



**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE    «EFFDATE»          *and is part of Policy Number:    «NUMBER»

*issued to: «ASSDNAME»

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## POLLUTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

Effective at inception and in consideration of the premium charged, it is understood and agreed that SECTION I - COVERAGE A. - EXCESS LIABILITY COVERAGE Paragraph 2. EXCLUSIONS is amended to include the following:

(g) Bodily injury, property damage, personal injury, loss of, damage to or loss of use of property, or any other form of liability or damages to which any insured may be subject arising out of the actual, alleged, or threatened discharge, dispersal, release, seepage, migration or escape of pollutants at any time at any location by whomsoever caused;

*The above,*
This exclusion does not apply to bodily injury, property damage, or personal injury if such discharge, dispersal, release or escape meets all five of the following conditions:

    (i)   The discharge, dispersal, release or escape must be an accident which was not intended by any insured.  However, this condition would not serve to deny coverage for a specific incident where such discharge, dispersal, release or escape of pollutants was a result of an attempt by any insured to mitigate or avoid a situation where third party bodily injury, property damage, or personal injury could occur; and

    (ii)  The beginning of the discharge, dispersal, release or escape must take place during the policy period specified in the Declarations; and

    (iii)  The discharge, dispersal, release or escape did not result from your willful violation of any government statute, rule or regulation; and

    (iv)  The discharge, dispersal, release or escape must become known to you within:

        (a)   180 days of its commencement if you are acting as a non-operator, as designated in the applicable operating agreement; or

        (b)   90 days of its commencement if you are acting as an operator, as designated in the applicable operating agreement; or

        (c)   30 days of its commencement if you are acting as anything other than an operator or non-operator, as designated in the applicable operating agreement; and

P629-OG (10/97)

Page 1 of 3

(v)   The discharge, dispersal, release or escape must be reported in writing to us as soon as practicable, but not longer than 90 days from the date of discovery by you.

For purposes of complying with the requirements of this paragraph, notice to us by any insured constitutes notice by all insureds.

If any such actual, alleged or threatened discharge, dispersal, release or escape of pollutants results from a well out of control, as defined herein, coverage provided by this endorsement will always apply excess of the limits provided under an insured's control of well policy, as applicable.

Nothing contained in this endorsement shall operate to provide any coverage with respect to:

(1)   Any loss, cost or expense arising out of any request, demand or order, including demands, directives, complaints, suits, orders, or requests brought by any governmental entity or any person, entity or group of persons or entities, that any insured or any person or entity for whom any insured may be legally responsible, to test for, assess, monitor, clean up, remove, contain, treat, or detoxify, neutralize or any way respond to or assess the effects of any pollutants resulting from:

(i)   Waste or disposal sites which were, or currently are, owned, operated, or used by any insured, or were or currently are utilized by others acting for any insured and/or on any insured's behalf.  This exclusion (i) shall not apply with regard to saltwater disposal operations;

(ii)   Disposal or dumping at any such waste or disposal site(s) of any seeping and/or polluting and/or contaminating substances or materials or waste substance(s) or waste material(s) of whatsoever nature.  This exclusion (ii) shall not apply with regard to saltwater disposal operations;

(iii)   Conveyancing, carriage or transportation to or from such waste or disposal site(s) of any seeping and/or polluting and/or contaminating substances or materials or waste substance(s) or waste material(s) of whatsoever nature.  This exclusion (iii) shall not apply with regard to saltwater disposal operations; and,

For purposes of this endorsement, mud pits are not considered a waste or disposal site.

(2)   Fines, or penalties which result directly from any willful violation or non-compliance with any current rule, regulation or law applicable at the time of loss.

(3)   Removal of, loss of, or damage to subsurface oil, gas or any other substance or material(s).

(4)   Any voluntary or mandated loss, costs, or expense arising from past or present operations performed at sites appearing on the "National Priorities List of Superfund Sites".

For purposes of this Endorsement the following definitions apply:

"Pollutants" means any solid, liquid, gaseous or thermal irritant, contaminant or waste, including but not limited to saline, saltwater, smoke, vapors, soot, dust, fumes, acids, alkalis and chemicals.  Waste includes any materials which are intended to be recycled, reconditioned or reclaimed, regardless of whether the waste has the effect of making something impure or hazardous.

"Well" means a borehole sunk into the earth for the purpose of obtaining hydrocarbons and/or steam and/or sulphur and shall also include boreholes used for disposal of salt water or for injection of water or gas; including structural components and integral equipment therein from the bottom of the borehole through the casinghead or wellhead assembly.

P629-OG (10/97)                                                              Page 2 of 3

Northfield 000098

"Well out of control" means an unintended and unexpected flow or expulsion from the well of drilling fluid, oil, gas and/or water, above or below the surface of the ground (or waterbottom in case of a well located in water) or when the well is declared to be out of control by the appropriate U.S. or Canadian regulatory authority which has jurisdiction over such well.

All other terms and conditions remain unchanged.

BY:_____

P629-OG (10/97)                                                                                          Page 3 of 3

 **Northland**
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE     «EFFDATE»          *and is part of Policy Number:   «NUMBER»

*Issued to: «ASSDNAME»

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

Effective from inception and in consideration of the premium charged, it is understood and agreed that Additional
Insureds are covered under this policy as required by written contract, but only with respect to operations
performed by or for the Named Insured, under contracts normal to the Named Insured's operations, and only if
such Additional Insureds are also Additional Insureds under the "underlying insurance."

It is further agreed and understood that any insured under an underlying policy scheduled herein is an insured under
this policy, except as specifically excluded.

All other terms and conditions remain unchanged.

BY:_____

P624-OG (10/97)

Northfield 000078



**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE   «EFFDATE»          *and is part of Policy Number:   «NUMBER»

*Issued to: «ASSDNAME»

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## WAIVER OF SUBROGATION

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

In consideration of the premium charged and only if this same extension of coverage is included in the "underlying
insurance," it is agreed that in the event of any payment under the terms of this policy, **we** waive our rights of
subrogation as respects the **Insured's** right of recovery against parties requiring such waiver under a contract with
the **Insured** provided such waiver predated any "claim" under this insurance.

All other terms and conditions remain unchanged.

BY:_____

P625-OG (10/97)



**Northland**
**Insurance Companies**

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE    «EFFDATE»         \*and is part of Policy Number:    «NUMBER»

\*issued to: «ASSDNAME»

\*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

## DUTIES IN THE EVENT OF INCIDENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

Section IV CONDITIONS paragraph 3. Duties In The Event Of Incident, Claim Or Suit is amended to include the following paragraph:

e.   Notice of an "incident," claim or "suit" as required above, should be given to us as shown below:

Northfield Insurance Company
c/o Burke Daniels Co., Inc.
Claims Department
9301 Southwest Freeway, Suite 500
Houston, Texas 77074

All other terms and conditions remain unchanged.

BY:_____

P628-OG (10/97)

Northfield 00000


# Northland
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

*This endorsement is EFFECTIVE     «EFFDATE»          *and is part of Policy Number:   «NUMBER»

*Issued to: «ASSDNAME»

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## UNDERGROUND RESOURCES HAZARD PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

In consideration of the premium charged, and only insofar as coverage is provided in the "Underlying Insurance"
Scheduled in this policy, coverage hereunder is extended to include your liability for "property damage" to or
destruction of, including loss of use of underground resources.

The following provisions apply with respect to "property damage" included within the "underground resources
hazard" arising out of the operations performed by you or on your behalf and described in this endorsement:

1.  The following exclusions are added to SECTION I, COVERAGES, COVERAGE A - EXCESS LIABILITY
    COVERAGE, paragraph 2, EXCLUSIONS:

    g.  Any costs or expense incurred by you or at your request or by or at the request of any "co-owner of
        the working interest" in connection with controlling or bringing under control any oil, gas or water
        well.

    h.  Damages claimed by any "co-owner of the working interest".

2.  The following additional definitions are added to SECTION V - DEFINITIONS COVERAGE A:

    8.  "Underground resources hazard" means third party "property damage" to any of the following:

        a.  Oil, gas, water or other mineral substances which have not been reduced to physical possession
            above the surface of the earth or above the surface of any body of water;

        b.  Any well, hole, formation, strata or area in or through which exploration for or production of any
            substances is carried on.

    9.  "Co-owner of the working interest" means any person or organization who is, with you, a co-owner,
        joint venturer or mining partner in mineral properties who:

        a.  Participates in the operating expense of such properties; or

        b.  Has the right to participate in the control, development or operation of such properties.

3.  Upon the "occurrence" of a blowout or cratering of any oil, gas or water well resulting from or in
    connection with operations performed by you or on your behalf, you agree that you will at your own cost
    and expense, promptly and diligently take whatever steps are necessary or legally required of you or any
    other person to bring such well under control.

If you delay or fail to comply with this agreement, we will not be liable for any "property damage" included
within the "underground resources hazard" resulting from the blowout or cratering of any such well.

P623-OG (10/97)                                                          Page 1 of 2

It is hereby agreed and understood that this endorsement shall not extend coverage to apply to damage to or loss of use of any casing, pipe, bit, tool, pump, or other drilling or well servicing equipment or machinery or equipment located beneath the surface of the earth or beneath the surface of any body of water.

It is further agreed and understood that if you carry any other valid insurance covering any claims, losses, perils or hazards covered hereunder, then this policy shall apply in excess of all other such insurance.

All other terms and conditions remain unchanged.

BY:_____

Northfield 000092

NOTICE OF REMOVAL-EXHIBIT 2



THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

*This endorsement is EFFECTIVE     «EFFDATE»     *and is part of Policy Number:  «NUMBER»

*Issued to: «ASSDNAME»

*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## FELLOW EMPLOYEE ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

Effective at inception and in consideration of the premium charged, it is understood and agreed SECTION II – WHO IS AN
INSURED COVERAGE A AND B paragraph 2. Sub-paragraph (a) is eliminated in its entirety and replaced by the following:

    2.    Each of the following is also an insured:

        (a)  **Your** employees, other than your executive officers, but only for acts within the scope of their
employment by you.

            However, none of these employees, other than your managers and/or supervisors is an insured for
**"bodily injury"** or **"personal injury"** to you or to a co-employee while in the course of his or her
employment.

All other terms and conditions remain unchanged.

BY:_____

P652-OG (2/98)

 **Northland**
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

\*This endorsement is EFFECTIVE     «EFFDATE»          \*and is part of Policy Number:   «NUMBER»

\*issued to: «ASSDNAME»

\*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement
is the same as the effective date of the policy.

## ADDITIONAL INSURED OIL OR GAS OPERATIONS
## NON-OPERATING WORKING INTEREST

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

The definition of "insured" on page one of this policy does not apply to non-operators as designated in the applicable
operating agreement.  SECTION II - WHO IS AN INSURED COVERAGE A AND B is amended to include the following as
an **insured**:

1.  **You** with respect to any non-operating working interest in any oil or gas lease with any co-owners, joint venture, or
    mining partners, but only with respect to liability arising out of such interest;

2.  When any Named **insured** is designated as an operator in the applicable operating agreement, the first Named
    **insured** shown in the Declarations may elect to consider as insureds, any of **your** co-owners, joint venture or mining
    partners having a non-operating working interest with **you** in any oil or gas lease, but only with respect to their liability
    arising out of such interest and only to the extent of:

    a)  The first Named **insured's** election, within the limit of liability of this policy; or

    b)  In the absence of an election by the first Named **insured**, the extent provided for in the applicable operating
        agreement, within the limit of liability of this policy; or

    c)  In the absence of an election by the first Named **insured** and an operating agreement, the limit of liability
        provided by this policy.

3.  The first Named **insured** shown in the Declarations may elect to consider as insureds, any owners or co-owners of oil
    or gas leases, but only with respect to **your** or their liability for operations **you** conduct as operating agent under
    written contract with the owner or co-owner and only to the extent of:

    a)  The first Named **insured's** election, within the limit of liability of this policy; or

    b)  In the absence of an election by the first Named **insured**, the extent provided for in the applicable operating
        agreement, within the limit of liability of this policy; or

    c)  In the absence of an election by the first Named **insured** and an operating agreement, the limit of liability
        provided by this policy.

P702-OG (2/98)                                                                                               Page 1 of 2



**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

\* This endorsement is **EFFECTIVE**                    \* and is part of Policy Number:

\* issued to:

\* Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the
same as the effective date of the policy.

### SERVICE OF SUIT

It is agreed that in the event of our failure to pay any amount claimed to be due hereunder, we, at your request,
will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will
comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be
determined in accordance with the law and practices of such court.

It is further agreed that service of process in such suit may be made upon our President or his nominee, at 1295
Northland Drive, Mendota Heights, Minnesota 55120 and that in any suit instituted against any one of them upon
this policy we will abide by the final decision of such court or of any appellate court in the event of an appeal.

The above-named is authorized and directed to accept service of process on our behalf in any suit.

_____
Authorized Representative

S1030-IL (6/94)

IL 02 75 06 95

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT
              COVERAGE FORM
GLASS COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph **2.** of the **CANCELLATION** Common Policy Condition is replaced by the following:

  **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

    However if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

The permissible reasons for cancellation are as follows:

  **a.** If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

  **b.** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

    **(1)** Fraud in obtaining coverage;

    **(2)** Failure to pay premiums when due;

    **(3)** An increase in hazard within the control of the insured which would produce an increase in rate;

Copyright, Insurance Services Office, Inc., 1995
Copyright, ISO Commercial Risk Services, Inc., 1995

Northfield 00007

NOTICE OF REMOVAL - EXHIBIT 2

(4) Loss of our reinsurance covering all or part of the risk covered by the policy; or

(5) If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

B. The following condition is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. This Paragraph, 2., applies unless the policy qualifies under Paragraph 3. below.

   If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

3. If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

   a. The first Named Insured; and

   b. Each unit-owner to whom we issued a certificate or memorandum of insurance.

   We will mail or deliver such notice to each last mailing address known to us.

4. If notice is mailed, proof of mailing will be sufficient proof of notice.

5. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

Copyright, Insurance Services Office, Inc., 1995
Copyright, ISO Commercial Risk Services, Inc., 1995

IL 02 75 06 95 □

Northfield 000019

 **Northland** Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

ENDORSEMENT NO.   1

| POLICY NO.<br>NU101368 | POLICY CHANGES<br>EFFECTIVE<br>January 31, 1999 | COMPANY<br>Northfield Insurance Company |
|---|---|---|
| NAMED INSURED<br><br>Wagner Oil Company | | AUTHORIZED REPRESENTATIVE<br><br>Burke-Daniels Co., Inc. |

| COVERAGE PARTS AFFECTED |
|---|
| P657-OG (10/97) and All Policy Attachments/Forms |

**CHANGES**

The Named Insured is completed to read as follows:

Wagner Oil Company
Aptian Energy Services, Ltd.
Aptian Gas Corporation
Bartonian Partners
Bryan C. Wagner
Carancahua L.P.
Claiborne, L. P.
Discorbis Pipeline
Goldenrod Transmission Company
Norias, L.P.
Turonian Corp.



All Other Terms and Conditions Remain Unchanged.

_____

Authorized Representative Signature

P662-OG (10/97)

NOTICE OF REMOVAL EXHIBIT 2



**Northland**
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

☑ DROP
☐ REFER
☐ SUSPENSE

ENDORSEMENT NO.   2

| POLICY NO. | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| NU101368 | January 31, 1999 | Northfield Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Wagner Oil Company | Burke-Daniels Co., Inc. |

**COVERAGE PARTS AFFECTED**

P657-OG (1O/97) and All Policy Attachments/Forms

**CHANGES**

It is understood and agreed that the Named Insured is amended to include:

H. Ed Patterson
Brent D. Talbot
Stephen M. Clark
Ernie Grodi
Dennis A. Taylor
Mark W. Belcher

5T already shown

OUT
· · 19 · ·

S.L.E.
APR 16 1999
C/S PROCESSING

MAR 30 1999
C/S PROCESSING

All Other Terms and Conditions Remain Unchanged.

_____
Authorized Representative Signature

P662-OG (10/97)

Northfield 000110

**Texas Department of Insurance**
333 GUADALUPE ST | AUSTIN TX 78701
PO BOX 149104 | AUSTIN TX 78714-9104

**RETURN SERVICE REQUESTED**

CERTIFIED MAIL™

7010 1670 0003 7284 4539

OFFICIAL BUSINESS
STATE OF TEXAS
PENALTY FOR PRIVATE USE

neopost
03/03/2017
US POSTAGE $017.80⁰

PRIORITY MAIL

ZIP 78701
041L12203074

Brian W. MacLean, President
Northfield Insurance Company
1 Tower Square
Hartford, CT 06183-0001

Received
Hartford Office

Screened by CALD

Date: 3|8|17

NOTICE OF REMOVAL-EXHIBIT 2

**Harrell, Torrence**

| | |
|---|---|
| **From:** | Delgado,Wilma <WDELGAD1@travelers.com> |
| **Sent:** | Wednesday, March 08, 2017 2:47 PM |
| **To:** | TravelersSOP |
| **Cc:** | Service-of-Process-Coordinator |
| **Subject:** | Travelers Direct 3/8/17 |
| **Attachments:** | Bryan C Wagner v. Northfield Ins Co(s).pdf |

This communication, including attachments, is confidential, may be subject to legal privileges, and is intended for the sole use of the addressee. Any use, duplication, disclosure or dissemination of this communication, other than by the addressee, is prohibited. If you have received this communication in error, please notify the sender immediately and delete or destroy this communication and all copies.